OPINION OF THE COURT
 

 Jones, J.
 

 A memorandum prepared by a public agency for internal use addressing a position it may take in pending or prospective collective bargaining negotiations to which it is a party is not a “final determination” by the agency, access to which may be obtained under the Freedom of Information Law.
 

 Petitioner instituted this proceeding under CPLR article 78 by petition alleging that over a period of more than 30 years he had been jointly designated by various transit authorities and unions in New York City as impartial arbitrator of disputes in the transit industry in that area, the designation having been most recently included in collective bargaining agreements between the unions and the New York City Transit Authority and the Manhattan and Bronx Surface Transit Operating Authority — divisions of respondent Metropolitan Transit Authority (MTA) — which expired on March 31,1982. He also alleged that, relative to ongoing negotiations with respect to succeeding agreements, it was reported in the local press on April 5, 1982 that MTA’s president, respondent Ravitch, had publicly stated that MTA did not want petitioner to be redesig-nated as impartial arbitrator because it had found his
 
 *5
 
 recent decisions “unfavorable to management and favorable to the union” and that Ravitch had in his possession a “memorandum” which had been prepared by the staff of the City Transit Authority documenting petitioner’s unfavorable rulings. Petitioner further alleged that on April 6, 1982, the day following publication of the news item, he demanded access to the memorandum under the Freedom of Information Law (Public Officers Law, art 6), as well as to a determination he claimed had been made by MTA as a result of the memorandum to oppose his designation in the agreements then being negotiated with the unions, but that his demand had not been complied with. He stated that on April 27, 1982 counsel for MTA had denied him access to the memorandum, asserting that its disclosure would impair collective bargaining negotiations and that it was interagency or intra-agency material not of a kind subject to disclosure under the statute, and had failed to respond to the demand for a copy of MTA’s determination. By way of relief, he sought judicial review of the Authority’s failure to comply with his demand and judgment directing that he be given copies of the memorandum and the determination. In an affidavit accompanying his petition, petitioner stated that he had first learned of the memorandum a few days prior to the news article and, believing that an impartial arbitrator must be acceptable to both sides to be effective, had announced on April 4, 1982 that he would not accept redesignation to the position he had long occupied, thereby putting an end to any collective bargaining negotiations concerning his reappointment.
 

 In their answer respondents MTA and its president Ravitch reaffirmed the position taken by them in response to petitioner’s initial demand under the Freedom of Information Law — i.e., that the memorandum prepared by the City Transit Authority’s staff (on March 18, 1982) was exempt from public access under section 87 (subd 2, par [c]) of the Public Officers Law
 
 [1]
 
 because its disclosure would impair collective bargaining negotiations and exempt as
 
 *6
 
 well under paragraph (g)
 
 [2]
 
 of the same subdivision as inter-agency or intra-agency material which is not statistical or factual data, instructions to staff, or a final agency policy or determination. As to the request for a copy of MTA’s determination to oppose petitioner’s redesignation as impartial arbitrator, respondents denied that any such determination had been made, submitting in support of their denial affidavits by the vice-chairman of MTA and by the president of the City Transit Authority (by whom the memorandum had been prepared), stating that the selection of the impartial arbitrator was a of negotiation between the unions and the transit authorities, that the board of MTA had delegated its negotiating authority to a three-person negotiating team who made their own decision as to the wisdom of continuing petitioner as grievance arbitrator in the agreements being negotiated, and that the board of MTA had voted on no matters relating to the negotiations and had not had circulated among its members the memorandum prepared by the president of the City Transit Authority. The affidavit submitted by the memorandum’s preparer described it as a representation of “my analysis of petitioner’s recent decisions and my opinion as to the advisability of agreeing to retain him as the grievance arbitrator under a new agreement”, compiled along with 25 other position papers over a period of more than a year in anticipation of negotiations with the unions for internal use by the Authority’s bargaining team. The preparer stated further: “The memorandum which petitioner seeks does not represent final agency policy. It was prepared prior to any position being taken on the issue; it had no operative effect independent of the effect it had on its readers, who were entirely capable of forming their own views on the basis of information available from a myriad of sources, and did so.”
 

 Supreme Court rejected the claims of exemption urged by respondents with respect to the memorandum and directed that it be made available to petitioner. In light of
 
 *7
 
 the fact that there had been no determination made by MTA, the court directed that it furnish petitioner with a certification as to whether it had such a determination and that, if it did not, it furnish petitioner with a statement of what records existed regarding the determination of which disclosure was sought.
 

 The Appellate Division, after an
 
 in camera
 
 examination of the March 18, 1982 memorandum (which had not been included in the record or submitted to Supreme Court), unanimously reversed the judgment of Supreme Court and dismissed the petition, concluding that the memorandum was intra-agency material exempt under section 87 (subd 2, par [g]) of the Public Officers Law and that the “broad discretion” for specification of other records respondents might have but which had not been included in petitioner’s demand for access circumvented the required procedure of the Freedom of Information Law. Petitioner is in our court by virtue of an appeal as of right (CPLR 5601, subd [a], par [ii]), renewing his plea for access to the memorandum.
 
 [3]
 

 Because the Appellate Division was correct in its dismissal we affirm the order of that court.
 

 There is no dispute that the memorandum prepared by the president of the City Transit Authority on March 18, 1982 to which petitioner sought access was intra-agency material within section 87 (subd 2, par [g]) of the Public Officers Law and, as such, exempt from disclosure, unless it fell within one of the three categories of such material reachable under that paragraph. As the basis for his claim to access, petitioner relies on the third category — “final agency policy or determinations” — asserting, not that the memorandum itself was a determination by MTA, but that it was a postdecision communication and as such has been swept into the class of documents which have been held to be available under statutory language somewhat similar to that on which he relies
 
 (NLRB v Sears, Roebuck & Co.,
 
 421 US 132, 151-152). Offering for support nothing more than his own recital that “I was told by union representatives prior to March 18, 1982, the date of the Memoran
 
 *8
 
 dum, that Ravitch had told them that under no circumstances would or could he agree to my redesignation as Impartial Arbitrator”, he contends that a final agency policy or determination to oppose his redesignation had already been made in advance of the date of preparation of the memorandum that he sought, and that the memorandum was therefore not protected, predecisional material but simply postdetermination documentation created for the purpose of fortifying the decision already reached.
 

 That claim, which is indispensable to petitioner’s request for access under the Freedom of Information Law, is unsupportable, having regard for the ambiance in which the alleged determination is asserted to have been made. The transit unions and authorities were in the process of collective bargaining, still negotiating the terms of successor agreements to those about to expire on March 31,1982 when the memorandum in question was prepared. Given the fluidity of positions of parties engaged in such procedure, striving to arrive at mutually acceptable accommodations with the give and take endemic to the process of collective bargaining, it would be unrealistic to characterize as a “final agency determination” any stance which either party to the process might appear to be adopting prior to a binding agreement’s having been reached by both sides, or, as ultimately occurred in this instance, submission of their differences to binding interest arbitration.
 
 [4]
 
 Until that moment arrived, the posture of MTA and its subsidiaries with respect to any of the subjects of negotiation, of which the designation of the impartial arbitrator was indisputably one, could only be regarded as unfixed and alterable, as negotiation might demonstrate the wisdom of change. Indeed, experience would belie reliance even on what, for bargaining purposes, might be made to appear to be an immutable position, in light of the often ephemeral quality of immutability as the collective bargaining process advances. In only the exceptional case — which this is not — might a showing justify a conclusion that a final agency determination (which would subject to disclosure under the statute written evidence of such a
 
 *9
 
 determination relative to pending bargaining negotiations) had been made with respect to a subject of the negotiations prior to their completion.
 

 In view of our conclusion that the memorandum of March 18,1982 is exempt from access under the statute by reason of its being intra-agency material which is not a final agency policy or determination within section 87 (subd 2, par [g]) of the Public Officers Law, we do not reach the question whether it is also exempt under paragraph (c) as a record the disclosure of which would have an adverse effect on collective bargaining negotiations. In response to petitioner’s argument that if, as we have indicated, agency positions formulated during such negotiations are exempt under paragraph (g), there is no need for the exemption provided by paragraph (c), we would only point out that the latter exemption has a reach beyond merely what might be sought to be excluded as intra-agency materials which are not final agency determinations, as, for example, intra-agency materials which are “statistical or factual tabulations or data” (Public Officers Law, § 87, subd 2, par [g], cl [i]).
 

 Nor do we consider or address petitioner’s contention that under our State statute postdecision materials are indeed obtainable under the category of final agency determinations.
 

 Finally, petitioner argues that the Appellate Division exceeded its authority when, as a predicate for its reversal of Supreme Court’s order directing access, it examined the memorandum in question despite the fact that the document had not been before the lower court. Although the parties strenuously dispute whether error was committed in this respect, we are not required to resolve their difference. Our decision of this appeal is not dependent on the content of the memorandum, which we ourselves have not examined, but rests entirely on the fact of the engagement of the transit unions and collective bargaining activities to which the memorandum was concededly relevant.
 

 For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
 

 [1]
 

 . Paragraph (c) authorizes an agency to deny access to records which “if disclosed would impair present or imminent contract awards or collective bargaining negotiations”.
 

 [2]
 

 “i. statistical or factual tabulations or data;
 

 “ii. instructions to staff that affect the public; or
 

 “iii. final agency policy or determinations”.
 

 [3]
 

 . Petitioner raises no challenge to the Appellate Division’s reversal of that portion of Supreme Court’s order directing MTA to furnish him with a certification as to other records which might exist.
 

 [4]
 

 . Petitioner’s voluntary withdrawal of his name on April 4, 1982 rendered it unnecessary ever to reach a final determination as to MTA’s position with respect to his redesignation as impartial arbitrator.