OPINION OF THE COURT
William H. Keniry, J.
The narrow issue presented in this CPLR article 78 proceeding is whether or not the State Board of Equalization and Assessment (SBEA or State Board) is required to disclose under the Freedom of Information Law (FOIL) (Public Officers Law art 6) certain "significant-insignificant” notations contained in sales data listings provided to the SBEA by the City of New York (City). The petitioners are attorneys active in representing clients in tax certiorari and other assessment proceedings in the City of New York who have been involved in long-standing litigation with the SBEA to secure New York City assessment data, including the above-referenced "significant-insignificant” notations.*
Before addressing the specific issue raised, a brief overview of the factual and historical basis of this proceeding is appropriate. Following transfer of any parcel of real property in New York City with a consideration greater than $25,000, the grantor and grantee must file a real estate transfer tax return with the City’s Department of Finance. The information set forth in all such returns is abstracted by the Finance Department and entered into the City’s computers. Summaries of the *327 transfer tax returns are made available in the form of computer tapes to the City’s Real Property Assessment Bureau. Every assessor in the Assessment Bureau utilizes the transfer tax return information to prepare an annual tentative assessment roll of property in his or her assigned district. Upon notification of a property transfer, an assessor reviews the transaction and first separates the transfer into 1 of 2 categories: either significant for assessment purposes denominated by an "S” or insignificant for assessment purposes denominated by an "I”. The "S” or "I” notations are then recorded in the assessor’s field book. The "S/I” notations are then submitted by the Assessment Bureau to the Finance Department and the notations are then entered into the City’s computer. Computer tapes generated from the transfer tax return data base with the inclusion of the "S/I” notation are regularly forwarded by the City to the SBEA.
With the exception of the "S/I” indicators, the petitioners’ right to obtain all information contained on the computer tapes from the SBEA was clearly established in Matter of Morris v Martin (55 NY2d 1026, revg 82 AD2d 965). Although the Morris decision seemingly mandated disclosure of the full contents of the transfer tax return computer tapes, the subsequent Court of Appeals holding in Matter of City of New York v New York State Bd. of Equalization & Assessment (65 NY2d 656, revg 102 AD2d 987) sustained the right of the respondent City to challenge the disclosure of the "S/I” indicators. The Court of Appeals remanded the issue of whether such data was entitled to a statutory exemption from FOIL disclosure for the SBEA’s consideration. Following the remand, the petitioners renewed their separate requests for the New York City sales data including the "S/I” indicators with the SBEA’s Records Access Officer. Following consideration of written arguments, the SBEA’s Records Access Officer concluded that "I find that the S/I indicators fit within the general intraagency or inter-agency exemption to the Freedom of Information Law, do not fit within any of the exceptions in section 87 (2) (g) and access thereto by petitioners is accordingly denied.” An administrative appeal of the decision was denied.
This article 78 proceeding then was initiated to reverse the denial of the petitioner’s Freedom of Information Law requests upon the ground that the decision was erroneous as a matter of law. The City of New York was not initially joined as a party. However, upon stipulation, the City was joined as a respondent and has filed an answer to the petition.
*328 The key provisions applicable to this proceeding are contained in Public Officers Law § 87 (2) (g) which states:
"2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: * * *
"(g) are inter-agency or intra-agency materials which are not:
"i. statistical or factual tabulations or data;
"ii. instructions to staff that affect the public; or
"iii. final agency policy or determinations”.
The respondents contend that the "S/I” notations were properly exempted from disclosure by the SBEA as inter-agency or intraagency material which do not fall within any of the three enumerated exceptions. By the affidavit of its Deputy Commissioner of Finance for Real Property Assessments, the City detailed the procedure followed by its assessors in assigning the "S” or "I” designation and the significance of that procedure to the City’s assessment program. According to the City, "the S/I notations indicate predecisional views which are prepared to assist in the process of fixing assessments” and that "the assessors’ notations concerning the significance of sales in the assessment process are not binding on the determination of tentative assessments by the Commissioner of Finance”. The City contends that release of the designations would "hamper open deliberation and the free exchange of opinions within the Real Property Assessment Bureau on sales and other factors underlying tentative assessments” and "mislead the public into believing that the S/I notations control the ultimate assessment”.
The SBEA, through the affidavit of its Deputy Executive Director for Equalization, described its procedure followed with respect to the New York City sales transaction information and outlined its understanding of the "S/I” designation. The SBEA summarizes its use of the "S/I” information as follows:
"14. It is in attempting to limit its search to arm’s length sales that State Board staff scans the S/I designations. Staff generally assumes that an 'S’ sale has a higher probability of being an arm’s length transaction than an T sale. Staff therefore begins its search for sales to be used in the survey by first examining those sales coded with an 'S’. However, this does not mean that staff accepts an 'S’ code as verification of *329 the fact that a sale is arm’s length, nor does it mean that staff does not look at or use sales coded T. The presence of the codes is simply a convenience.
"15. State Board staff’s incidental use of the S/I designations is not formalized in the Board’s rules. Since staff may select from such a large number of sales, this informal procedure may help to expedite the search for comparables. New York City sales information, as a whole, is essential to State Board procedures; S/I designations are not.
"16. The State Board makes no other use of the S/I designations.”
The petitioners contend that the decision of the SBEA’s Records Access Officer was legally erroneous. They argue that the SBEA and the City failed to sustain their burden of proof to establish that the information is exempt from FOIL disclosure.
In considering any issue arising under the Freedom of Information Law, the court must start with the premise that "The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality” (Public Officers Law § 84). The statute "proceeds under the premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government. Thus, the statute affords the public the means to attain information concerning the day-to-day operations of State government” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). Moreover in Capital Newspapers, Div. of Hearst Corp. v Whalen (69 NY2d 246), the Court of Appeals held that personal or unofficial documents intermingled with official government files and "kept” or "held” by a governmental entity are "records” subject to disclosure under FOIL. However, the Freedom of Information Law is not absolute in scope and provides certain exemptions from discovery. The exemptions must be narrowly construed and the burden of demonstrating that material is exempt from disclosure always rests on the agency (Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557).
Guided by the above principles, the court must assess whether the SBEA and City have established their claim that the "S/I” designations as reported in the computer records *330 maintained by the State Board are interagency materials which are not statistical or factual tabulations or data, instruction to staff that affect the public or final agency policy or determination. The normal procedure in making such an evaluation would be for the court to conduct an in camera review of the disputed documents (Matter of Xerox Corp. v Town of Webster, 65 NY2d 131; Matter of Bray v Mar, 106 AD2d 311). However, such an examination would not be productive in this proceeding. This litigation centers on whether one tabular column appearing on computer printouts of New York City sales data should be disclosed. Samples of such printouts appear in the record. The examination of the "S/I” designations as they appear on the printout would prove meaningless to the court without a detailed review of the underlying transactions.
Upon a careful analysis of the arguments raised both in favor of and against disclosure of the "S/I” designations, this court concludes that the information sought, though inter-agency material, is properly categorized as statistical tabulations and data. In addition, the information constitutes instructions to the staff of the State Board that affect the public. Accordingly, such information is not properly exempt from FOIL disclosure. The decision of the State Board denying the petitioners access thereto is erroneous and must be annulled.
The FOIL statute does not itself define the terms "statistical or factual tabulations or data”. The regulations promulgated by the Committee on Open Government (21 NYCRR part 1401 et seq.) also fail to define the terms. The regulations adopted by the State Board (9 NYCRR subpart 185-1 et seq.) are likewise silent.
Although the origin of the "S/I” classification is initially based upon the opinion of individual City assessors, such designations, once they are entered into the City’s computer data base and transmitted to the State Board, are transformed into statistical data in this court’s judgment. "The mere fact that some of the data might be an estimate or a recommendation does not convert it into an expression of opinion or naked argument for or against a certain position and such tabular data is not excluded from disclosure” (Matter of Polansky v Regan, 81 AD2d 102, 104). This conclusion is supported by the SBEA’s use of the data. Although not formalized in a written policy the State Board concedes that the data is a guidepost (albeit not an exclusive one) for the selection of transactions for further analysis. Though the State Board avers that it does *331 not rely solely on sales coded "S” or that it does not ignore sales coded "I”, such designations "may help to expedite the search for comparables”.
The City’s argument that an assessor’s subsequent change in an "S/I” marking is not subsequently corrected in the computer is not persuasive. The fact remains that the SBEA makes use of the statistical and factual tabulations or data. The court is not aware of any limitation on the right to correct erroneous computer entries.
The City does not seriously challenge the premise that its individual assessor’s field books which contain the disputed information are subject to public inspection. A published opinion by counsel to the SBEA states that the field books are public records which may be inspected or copied under FOIL (4 Opns Counsel SBEA No. 25). The opinion further details the pre-FOIL history of the discoverability of such records including the applicability of General Municipal Law § 51 which provides that "[a]ll books of minutes, entry or account” filed with any local government "which possess the power to levy taxes or benefit assessments upon real estate * * * are hereby declared to be public records, and shall be open * * * to the inspection of any taxpayer or registered voter”. Thus, the petitioners are entitled to the information sought herein in another form, albeit in a manner more tedious and time consuming.
Cases which have concluded that an interagency or intraagency records exemption have been established usually involve advisory opinions which precede litigation or a formal governmental decision (Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, supra [appraisal reports prepared in connection with possible revaluation of a particular parcel]; Matter of Kheel v Ravitch, 62 NY2d 1 [memorandum discussing the qualifications and suitability of an arbitrator]; Matter of Bray v Mar, 106 AD2d 311, supra [staff opinions as to grant awards]; Matter of McAulay v Board of Educ., 61 AD2d 1048, affd 48 NY2d 659 [investigation of teacher’s performance]; Bartlett v Nassar, 100 Misc 2d 904 [budget officer’s projections]).
The "S/I” notations here are more akin to an assessor’s estimate or recommendation of the classification of a property transaction than an advisory opinion as to a tentative assessment and should be treated as statistical and factual tabulations or data. To hold otherwise would be to frustrate the over-all intent of the Freedom of Information Law.
*332 Similarly, the notations serve as a guidepost to the assessment staff of the State Board. Although not formalized by a written policy, the State Board utilizes the designations in selecting transactions for further analysis as part of its procedure in computing equalization rates for the City. Thus, it is reasonable to conclude that the "S/I” designations constitute a type of instruction from the City to the State Board which affect the public. The use of the "S/I” mode by SBEA employees constitutes instructions to staff that affect the public. This finding is supported by the SBEA’s own admissions that the "S/I” designations serve a useful purpose and that its staff uses the breakdown as part of its regular business practices in selecting parcels for comparable sales analysis.
This court is aware of the Court of Appeals holding in Matter of 425 Park Ave. Co. v Finance Adm’r of City of N. Y. (69 NY2d 645). That case involved proceedings brought pursuant to article 7 of the Real Property Tax Law seeking to review the correctness of assessments on property. Special Term directed respondents to produce and permit discovery of certain data including "S/I” notations. The Appellate Division reversed so much of the order which granted petitioner’s motion for discovery of data with the "S/I” notations. The Court of Appeals held that the Appellate Division’s action was not an abuse of discretion, pointing out that the requested data would have no relevancy to any issues that could be raised in the proceeding. The 425 Park Ave. case is clearly distinguishable from the case at hand. The court recognizes that the petitioners in this action may utilize the information obtained here in future or in pending litigation. Nevertheless, the right of access to records of a government agency under FOIL is not affected by the potential use (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75).
Petitioners, in addition to a reversal of the SBEA’s decision, seek an award of attorney’s fees and costs pursuant to Public Officers Law § 89 (4) (c) which provides as follows:
"(c) The court in such a proceeding may assess, against such agency involved, reasonable attorney’s fees and other litigation costs reasonably incurred by such person in any case under the provisions of this section in which such person has substantially prevailed, provided, that such attorney’s fees and litigation costs may be recovered only where the court finds that:
"i. the record involved was, in fact, of clearly significant interest to the general public; and
*333 "ii. the agency lacked a reasonable basis in law for withholding the record.”
The assessment of attorney’s fees and costs lies within the sound discretion of the court (Matter of McAndrew v Board of Educ., 120 AD2d 591). Here we have a situation in which the SBEA possessed a reasonable basis in law for declining to release the information sought. Likewise, the "S/I” indicators only interest a narrow class of individuals and the issue of their discoverability is not of significant interest to the general public. Thus, an award of attorney’s fees and litigation costs is not appropriate.
The petition is granted to the extent that the determination of the Records Access Officer of the State Board of Equalization and Assessment dated December 10, 1985 is vacated and annulled and said agency is directed to comply with the petitioners’ demand for the requested information upon payment of any lawful fees therefor. In all other respects, the petition is denied.

 The efforts to secure the data sought commenced in 1980 and have resulted in two separate appellate determinations which are relevant to the instant proceedings as reported in Matter of City of New York v New York State Bd. of Equalization & Assessment (102 AD2d 987, revd 65 NY2d 656) and Matter of Morris v Martin (82 AD2d 965, revd 55 NY2d 1026).