OPINION OF THE COURT
Hancock, Jr., J.
We hold that under the Freedom of Information Law (FOIL) (Public Officers Law art 6) personal or unofficial documents which are intermingled with official government files and are being "kept” or "held” by a governmental entity are "records” maintained by an "agency” under Public Officers Law § 86 (3), (4). Such records are, therefore, subject to disclosure under FOIL absent a specific statutory exemption.
The term "record” for purposes of FOIL is broadly defined and includes "any information kept, held, filed, produced or reproduced by, with or for an agency * * * in any physical form whatsoever” (Public Officers Law § 86 [4]).[1] The definition of "agency” is equally inclusive, encompassing "any * * * public corporation * * * or other governmental entity” (Public Officers Law § 86 [3]).[2]
*249 At issue in this appeal by petitioner’s newspaper is whether two categories of documents in custody of respondent City of Albany should be held to be "records” under FOIL: correspondence of a former Mayor of Albany, the late Erastus Corning, II, concerning matters of a personal nature and correspondence concerning the activities of the Albany County Democratic Committee. The narrow question of statutory construction presented arises from respondents’ contention that although these papers are literally within the FOIL definitions as "record[s]” being "kept” or "held” by an "agency” (the City of Albany), they are, nonetheless, outside of the scope of FOIL because of the private nature of their contents. For reasons to be discussed, we disagree with respondents’ contention and conclude that there should be a reversal.
I
Erastus Corning, II, was the Mayor of Albany from 1942 until his death in 1983. During his tenure, Mayor Corning collected and stored more than 900,000 pages of documents (the Corning papers) at his office in City Hall. Included among the documents were letters and documents pertaining to Coming’s personal affairs and to his activities as Albany County Democratic Committee Chairman.
Following Mayor Coming’s death, some of his personal correspondence was turned over to his family. The rest of the documents were listed by title, given index numbers, packed in over 300 cartons and either stored "at Albany City Hall or transferred to the City and County Hall of Records”. On August 27, 1984, a reporter for petitioner’s Albany evening newspaper, The Knickerbocker News, was granted access to the Corning papers by respondent Thomas M. Whalen, III, Coming’s successor as Mayor of Albany. The reporter copied several documents which became the subject of news stories and in some cases appeared verbatim in The Knickerbocker News. Subsequently, respondents advised petitioner that further access would be denied until they had reviewed the Corning papers and removed the personal documents — which, in their opinion, were not covered by FOIL — and such other documents as were within one of FOIL’S specific exemptions. Respondents stated that access to Coming’s personal letters and to correspondence relating to his Albany County Demo *250 cratic Committee activities was being denied, not because of any claimed FOIL exemption but solely because those documents were not written or received by Corning in his capacity as Mayor. Access to the remaining Corning papers, respondents advised, would be allowed once the sorting process was completed and the personal letters and the Albany County Democratic Committee papers removed.
After the city’s FOIL Appeals Officer denied petitioner’s appeal of respondents’ partial refusal of access (see, Public Officers Law § 89 [4] [a]), petitioner sought an advisory opinion from the State Committee on Open Government (see, Public Officers Law § 89 [1] [b] [ii]). The Committee’s opinion in reply was that all of the Corning papers, unless specifically exempt, were accessible under FOIL because the papers were within FOIL’S expansive definition of "record” and were "kept” by the city, an "agency” as defined in the statute.
In this proceeding to obtain its statutory remedy of court-ordered access (Public Officers Law § 89 [4] [b]), commenced by petitioner after receipt of the advisory opinion, it alleges that the Corning papers were "received, prepared, copied or stored * * * by employees of the City or County of Albany”, that the "services, materials, equipment and personnel used in receiving, preparing, copying and storing the Corning papers were paid for or provided by the City or County of Albany”, and that the papers are currently being stored at Albany City Hall or at the City or County Hall of Records. Petitioner subsequently amended its request for access by limiting it to documents "assembled” from January 1, 1980 until June 1, 1983. Special Term (126 Mise 2d 710, 713) granted petitioner’s amended request but provided that respondents could "articulate particularized and specific justifications for withholding” specific documents under FOIL’S enumerated exemptions (Public Officers Law § 87 [2]); any records claimed by respondents to be exempt were ordered to be furnished to the court for its in camera inspection.
On appeal to the Appellate Division, that court unanimously modified by striking the requirement of disclosure for papers of a personal nature and those relating to the Albany County Democratic Committee and it remitted the matter to Special Term for further proceedings. The Appellate Division held that the Legislature intended to subject to disclosure only those records which revealed the workings of government and that disclosure of private papers of a public officeholder would not further the purpose of FOIL. Moreover, because the pa *251 pers were originally "kept” by Corning in his individual capacity, the court reasoned that they were not being "kept” by an "agency” for purpose of the FOIL request, even though the papers had, in the interim, come under the city’s custody. The appeal comes before us on a certified question: whether the Appellate Division erred as a matter of law, in modifying Special Term’s judgment with respect to the disclosure of the papers relating solely to Mayor Coming’s personal activities and those made or received in his capacity as Chairman of the Albany County Democratic Committee.[3] The question should be answered in the affirmative, the order of the Appellate Division reversed, and that of Special Term reinstated.
II
It is fundamental that in interpreting a statute, a court should look first to the particular words in question, being guided by the accepted rule that statutory language is generally given its natural and most obvious meaning (see, Price v Price, 69 NY2d 8, 15-17; McKinney’s Cons Laws of NY, Book 1, Statutes § 94, p 232). Here, if the terms "record” and "agency” are given their natural and obvious meanings, the Corning papers would fall within such definitions. The term "record” is defined as "any information kept [or] held * * * by, with or for an agency * * * in any physical form whatsoever” (Public Officers Law § 86 [4]). Unquestionably the Corning papers constitute "information * * * in [some] physical form” stored, "kept [or] held” by the city, a "governmental entity” and, as such, an "agency” for purposes of FOIL (see, Public Officers Law § 86 [3]).[4]
*252 Although the Corning papers thus come within the definition of "record”, respondents maintain that they should, nevertheless, not be held to be within the scope of FOIL. They argue that the Legislature intended that only records dealing with the governmental decision-making process should be subject to disclosure under FOIL not papers outside this category such as private papers of governmental employees. It is quite true, as respondents urge, that we are not bound to accord a literal interpretation to a statutory definition if to do so would lead to an unreasonable result or defeat the general purpose and manifest policy intended to be promoted (see, Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38), and that in the interpretation of statutes the "legislative intent is the great and controlling principle” (People v Ryan, 274 NY 149, 152). Here, however, we find nothing to suggest that the Legislature intended that the definitions of "record” and "agency” should be given anything other than their natural and obvious meanings. On the contrary, respondents’ narrow construction would be inimical to the public policy underlying FOIL and would conflict with the legislative intent which is apparent in the language of the statute as a whole and in the detailed procedures established in FOIL for designating documents which should properly be exempt. Moreover, the construction, if given effect, could, as a practical matter, frustrate the very purpose of the legislation.
It is settled that FOIL is based on the overriding policy consideration that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). Indeed, in enacting FOIL the Legislature specifically declared: "that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.” (Public Officers Law § 84.) We have held, therefore, that FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government (see, Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564, citing Matter of Fink v Lefkowitz, supra, at p 571). It is evident that the narrow construction respondents urge is contrary to these decisions and antagonistic to the important public policy underlying FOIL.
Nevertheless, respondents seek to read into the definitions of "record” and "agency” a requirement that, for documents *253 to be within FOIL’S scope, their subject matter must evince some governmental purpose. There is, however, no language in the statute itself and nothing in the legislative history suggesting that the Legislature intended such content-based limitation in defining the term "record”. On the contrary, we held in Matter of Westchester Rockland Newspapers v Kimball (50 NY2d 575, 581) that FOIL’S scope is not to be limited based on "the purpose for which the document was produced or the function to which it relates”. Such a limitation would be difficult to define, we explained, because of "the expanding boundaries of governmental activity” and because "in perception, if not in actuality, there is bound to be considerable crossover between governmental and nongovernmental activities, especially where both are carried on by the same pérson or persons” (id.).
Moreover, respondents’ construction — permitting an agency to engage in a unilateral prescreening of those documents which it deems to be outside the scope of FOIL — would be inconsistent with the process set forth in the statute. In enacting FOIL, the Legislature devised a detailed system to insure that although FOIL’S scope is broadly defined to include all governmental records, there is a means by which an agency may properly withhold from disclosure records found to be exempt (see, Public Officers Law § 87 [2]; § 89 [2], [3]). Thus, FOIL provides that a request for access may be denied by an agency in writing pursuant to Public Officers Law § 89 (3) to prevent an unwarranted invasion of privacy (see, Public Officers Law § 89 [2]) or for one of the other enumerated reasons for exemption (see, Public Officers Law § 87 [2]). A party seeking disclosure may challenge the agency’s assertion of an exemption by appealing within the agency pursuant to Public Officers Law § 89 (4) (a). In the event that the denial of access is upheld on the internal appeal, the statute specifically authorizes a proceeding to obtain judicial review pursuant to CPLR article 78 (see, Public Officers Law § 89 [4] [b]).[5] Respondents’ construction, if followed, would allow an agency to bypass this statutory process. An agency could simply remove documents which, in its opinion, were not within the scope of FOIL, thereby obviating the need to articulate a specific exemption and avoiding review of its action. Thus] respondents’ construction would render much of the statutory ex *254 emption and review procedure ineffective; to adopt this construction would be contrary to the accepted principle that a statute should be interpreted so as to give effect to all of its provisions (see, McKinney’s Cons Laws of NY, Book 1, Statutes §98).
Finally, as a practical matter, the procedure permitting an unreviewable prescreening of documents — which respondents urge us to engraft on the statute — could be used by an uncooperative and obdurate public official or agency to block an entirely legitimate FOIL request. There would be no way to prevent a custodian of records from removing a public record from FOIL’S reach by simply labeling it "purely private”. Such a construction, which could thwart the entire objective of FOIL by creating an easy means of avoiding compliance, should be rejected (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 96, 143, 144, 145).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the question certified answered in the affirmative and the judgment of the Supreme Court reinstated.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.

."Record” is defined as follows: "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes” (Public Officers Law § 86 [4]).

."Agency” is defined as follows: "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more munici *249 palities thereof, except the judiciary or the state legislature” (Public Officers Law § 86 [3]).

. The certified question is: "Did this court err, as a matter of law, in modifying Special Term’s judgment by reversing so much thereof as required disclosure of the papers of the late Erastus Corning, II, for the years 1980-1983 relating solely to his personal activities and those made or received in his capacity as Chairman of the Albany County Democratic Committee, remitting the matter to Special Term for further proceedings, and, as so modified, affirming the judgment?”

. Respondents argue that the Corning papers are not "record[s]” because the papers were kept by ex-Mayor Corning in his individual capacity, not as an officeholder, and, therefore, an "agency” did not keep or hold the documents. Petitioner did not, however, request disclosure of the Corning papers while they were being "kept [or] held” by Corning. Rather, disclosure is sought from the City of Albany, which now has custody of the papers and is storing them. Therefore, the only questions properly before us are whether the City of Albany is an "agency” and whether the Corning papers are "record[s]” for purposes of FOIL.

.FOIL also allows a party to receive an advisory opinion from the Committee on Open Government (see, Public Officers Law § 89 [1] [b]).