OPINION OF THE COURT
George A. Murphy, J.
This is a proceeding brought on by the petitioner pursuant to CPLR article 78 wherein he contends that, under the Freedom of Information Law of New York (FOIL) (Public Officers Law § 84 et seq.), he has a right of access, upon request, to certain teaching materials which have been formally authorized by the college and used in its academic course designated ”PED 251:Family Life and Human Sexuality”. The college answers by saying that: (1) the petition is untimely and is barred by the Statute of Limitations; (2) the materials are not "agency records” within FOIL’S definitions; (3) the materials are exempt under the statute as "inter-agency or intra-agency materials” (Public Officers Law § 87 [2] [g]); and (4) the materials are protected from such disclosure by the constitutional principle of academic freedom. The petitioner, in turn, disputes these assertions, insisting that they are without basis in law or in fact.
The State University of New York (represented by the Attorney-General of New York State) and New York State United Teachers have moved for permission to intervene as additional respondents in the proceeding. The motions are granted, without opposition. The court has read and considered their written and oral arguments before reaching its decision today.
The college’s assertion that the petition is untimely and barred by the Statute of Limitations requires a brief review of the attempts made by the petitioner to gain access to the subject materials. The petitioner’s first request pursuant to FOIL (Public Officers Law § 87 [2]) was made on June 12, 1988 *182 at which time he demanded only to view the film used in the course. That request was denied as was his appeal from such denial on the 8th of August 1988. Subsequently, on January 4, 1989, petitioner submitted a second request, this time to see the contracts of acquisition relating to the film. In addition, petitioner sought access to "all the visual aids used in FED 251”. This second request was also denied on February 14, 1989 as was his appeal therefrom on February 15, 1989. The petitioner commenced this proceeding on June 12, 1989. At about the same date, the college’s Board of Trustees, exercising jurisdiction over the dispute, formally approved the actions of the college’s President Fanelli by not overruling him.
An article 78 proceeding must be commenced within four months "after the determination to be reviewed becomes final and binding upon the petitioner”. (CPLR 217.) The determination becomes "binding when the aggrieved party 'is notified’ ”. (Matter of Village of Westbury v Department of Transp., 75 NY2d 62, 72 [1989].) More importantly, the petitioner is not to be held "notified” and, thus, "aggrieved” when the agency, by its conduct of the matter, has created an ambiguity as to whether or not the determination was final. (See, Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352; see also, Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834.) Based on the history of this dispute, which was played out in the public arena, and based particularly upon the official action of the Board of Trustees, it is manifest that the college authorities had not yet finally decided the issue until about the time petitioner decided to commence this proceeding for judicial relief. It cannot be said that the petitioner was less than diligent in pursuing his request and, in these circumstances, the court concludes that the petition was commenced in a timely fashion and there are insufficient grounds for its dismissal.
Before addressing the remaining three substantive contentions of the college, the court notes that upon the oral argument in this proceeding, after inquiry made by the court, the petitioner expressly withdrew that part of his petition seeking copies of the contracts and visual aids and limited his request merely to "inspect” the materials at a time and place convenient to the college authorities. Thus, the possible issue of copyright infringement and its consequences is disposed of as moot.
The college suggests that it may enjoy an immunity as a nongovernmental entity, except as it is concededly tax sup *183 ported at the local and State levels. The statute defines "Agency” as: "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature.” (Public Officers Law §86 [3].) The court finds that the college is well within the definition of "Agency” and, therefore, rejects this suggestion by the college.
The college’s contention that the subject materials do not come within FOIL’S definition of "record” must also fail as without any reasonable basis. Public Officers Law § 86 (4) defines record as "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes.” Public Officers Law § 89 (1) (b) (ii), which applies to all records with only a few exceptions, provides for the Committee on Open Government, which is mandated, among other duties, to "furnish to any person advisory opinions or other appropriate information regarding this article [FOIL]”. That Committee, by its staff, has formally advised the petitioner, in writing, in pertinent part as follows: "The film constitutes a 'record’ subject to the Freedom of Information Law, for the film is an information medium [and] is apparently 'kept’ or 'held’ by the College.” The court agrees totally with this sensible analysis and opinion by the staff of this completely objective Committee assigned an advisory but nevertheless very important and responsible role of interpreter of FOIL in this State. The contention by the college that the materials are not "Agency Records” is therefore necessarily rejected as groundless. (Matter of Prisoners’ Legal Servs. v New York State Dept. of Correctional Servs., 138 AD2d 712.)
Moving next to the college’s third argument that these materials sought by the petitioner are "exempt” from such disclosure as he seeks because they are in the statutory category of "inter-agency or intra-agency materials”, the court cites the pertinent parts of Public Officers Law § 87 (2) which govern their status:
"§ 87 * * *
"2. Each agency shall, in accordance with its published *184 rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * *
"(g). are inter-agency or intra-agency materials which are not * * *
"iii. final agency policy or determinations”.
The parties are in direct confrontation on this issue: the college argues that the materials are nondisclosable because they are "inter-agency or intra-agency” in nature while the petitioner argues that the materials fall within the exception under clause (iii) which mandates their disclosure. The courts have overwhelmingly construed the terms "inter-agency” and "intra-agency” to refer solely to predecisional and preliminary deliberative written materials on the theory that to protect such materials from public scrutiny aids in the efficiency of agency operations. A plethora of case law has well delineated these kinds of materials in varied circumstances. (See, Matter of Xerox Corp. v Town of Webster, 65 NY2d 131; McCauley v Board of Educ., 61 AD2d 1048, affd 48 NY2d 659; Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176, 182.) However, the court is constrained to agree with petitioner that since the teaching materials at issue in this case have been authorized by the college and actually used in PED 251 for years (having been determined long ago to be useful, suitable and appropriate), they cannot possibly be predecisional or deliberative in nature, but rather college policy and determination, firmly and finally established and fixed at this time. That being the case, Public Officers Law § 87 (2) (g) (iii) mandates their availability as disclosable materials. This is in keeping with ample precedent which demands that FOIL be liberally construed and that the provisions for exemptions from disclosure be narrowly interpreted in the conduct of public affairs by public employees. (Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252, citing Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564, and Matter of Fink v Lefkowitz, 47 NY2d 567, 571.) Moreover, a person seeking access need not demonstrate a need for the subject materials. (Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, 581.) The presumption is that the record must be made available and the burden is placed upon the agency to justify a denial under one or more of the specified exemptions. (Matter of Washington Post Co. v New York State Ins. Dept., supra.) Nor may the agency *185 "select” the materials it chooses to make available and withhold others it declines to exhibit because of subjective concerns not supported by statutory exemption. That course, it has been stated, would totally defeat the purpose of FOIL to provide unfettered access for the public to materials not exempt by law. (Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, supra.)
We come, finally, to the college’s argument that FOIL if applied to these materials represents an invasion of academia and a "chilling” of academic freedom at the college.
On this point, it seems appropriate to quote in full the legislative declaration set forth in section 84 of the Public Officers Law:
"§ 84. Legislative Declaration
"The legislature hereby finds that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.
"As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.
"The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.
"The legislature therefore declares that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article.”
It appears to this court that the college, by viewing this statute as a threat to academic freedom, totally misreads, misunderstands and misapplies FOIL’S high purpose, worthy objective and limited application. This is a "right to know” statute and no more. It is a gross error to equate the "right to know” with the "right to determine”. This latter right the college retains completely intact and its "academic freedom” *186 to determine as a matter of institutional policy what and how it will present its various courses is in no discernible way impinged upon by FOIL. The Legislature has proclaimed by enacting FOIL that the people have this right to know what is happening in the board rooms of government and, yes, in the halls of learning too, if that be an area of interest or concern to a citizen. Ample provision is made to exempt obviously sensitive and private areas from public scrutiny but the major thrust of the statute is to provide liberal opportunity for the people to know as much about what governmental institutions are doing as is practical and proper. An institution that is dedicated to the pursuit of information and truth ought not to place itself, mistakenly, against affording that same democratic freedom to the people who support it. Such a public posture is lamentable as incongruous, timid, suspect, groundless and totally unjustified. Prompt and practical retreat from questionable resistance to a laudable and balanced law would appear to be in the best interests of the college, in this court’s view. It is said the truth will make you free. And knowledge is power. And open government is good government. Self-indulgent secrecy is unbecoming, inappropriate and intolerable in this day and age of liberal discovery procedures under the law. The college foresees "a fear” or "a chill” if access to its policies and established determinations is afforded to the people. Aside from the fact that such an allegation does not suffice in law to create a justiciable controversy over which the court can exercise jurisdiction (see, Ex Parte Lévitt, 302 US 633, 634; Laird v Tatum, 408 US 1, 13), since it is too subjective and speculative for a court to resolve, it lacks essential persuasiveness. Subjective fear and imagination are our worst enemies as any historian or scholar can testify to: "The thing I fear most is fear” wrote Montaigne in 1580 while President Roosevelt, in 1932, warned "All we have to fear is fear itself.” The dark recesses of concealment and ignorance and secrecy, wherever they are found, are a source of discontent, frustration and ill will generated by noncommunication. What is right can stand the light of access and prove itself in the open forum. That, indeed, is what FOIL is designed to afford everywhere in government.
The college cites the Supreme Court cases of Sweezy v New Hampshire (354 US 234) and Keyishian v Board of Regents (385 US 589) as decisions turning on the issue of academic freedom. The fact is that the Supreme Court, while paying proper homage to academic freedom, in each of those cases *187 declined to base its decision on its panegyric to "the marketplace of ideas” and chose, rather, to decide the case on a rather ordinary legal basis that the source of the government action at hand was too uncertain and vague to be enforceable, given the dire consequences to the individuals targeted.
On this last point, then, the court must conclude that the contention is lacking basis in fact or in law and, in that sense, partakes of a certain irrelevancy, notwithstanding its emotional appeal to those easily persuaded that FOIL was designed to bring government on to the campus by merely pérmitting a citizen to know what is going on there if interested in or concerned about the matter, the place or those public servants who conduct public affairs as a "public trust”. The court, then, rejects as irrelevant to the issue of FOIL the argument based on loss or fear of loss of academic freedom which has been propounded by all respondents.
Significantly, the Committee on Open Government, in a staff letter to the petitioner, declined to render an opinion on the academic freedom question, stating that since the dispute involved academic materials it "raises issues that go beyond the scope of the Freedom Of Information Law.”
The court concurs although it employs the more appropriate term "irrelevant”, since the issue of academic freedom cannot possibly have anything to do with the basic and essential right of the citizen to inquire about and have informative access to any entity of government in those areas of function not expressly proscribed to public scrutiny by law. The authority here is the plain, clear, unambiguous language of FOIL which the court must accept as an elementary discipline of statutory construction. "The statutory language is mandatory and as to those items required to be disclosed the [agency] must comply. If from experience it is determined that the statute need 'revision’ it should be directed to the attention of the Legislature.” (Dunlea v Goldmark, 54 AD2d 446, 449 [3d Dept 1976], affd 43 NY2d 754.)
The prospect of having the courts amend FOIL is understandably dim. Since the issue in this case is the availability of its provisions to the petitioner and since those provisions are clear and unambiguous requiring compliance with the petitioner’s request, the only recourse of the college would appear to be the Legislature. Thus far no provision has been made for a blanket exemption for "academic or curricular materials”. Whether the Legislature is prepared to narrow *188 FOIL by adding such an exemption, based on the contention offered by the college, can only be surmised. FOIL was very substantially amended in 1977 and has been amended several times since. In any event, this is solely a legislative not a judicial area of response.
Accordingly, the court grants the relief sought in the petition (as modified by the petitioner) and directs the college forthwith to permit the petitioner to inspect the film, the visual aids and the contracts related to FED 251 at a time and place and pursuant to an arrangement agreeable to the parties. If agreement cannot be reached in this regard, the parties may apply to the court and the time and place and appropriate conditions will be ordered after a hearing.
in light of the decision of the court, all other contentions of the parties are disposed of as moot.