[906 NYS2d 651]

In the Matter of TOWN OF WATERFORD, Respondent-Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Appellant-Respondent.

Third Department, August 12, 2010

**APPEARANCES OF COUNSEL**

*Andrew M. Cuomo, Attorney General*, Albany (*Paul Groenwegen* of counsel), for appellant-respondent.

*Dreyer Boyajian L.L.P.*, Albany (*Craig M. Crist* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

KAVANAGH, J.

Petitioner is a Saratoga County municipality located in a water district that draws its drinking water from the Hudson River.[1] The Department of Health (hereinafter DOH), the United States Environmental Protection Agency (hereinafter the EPA) and respondent have overlapping jurisdiction and share statutory responsibility for the preparation and subsequent implementation of a hazardous waste remediation plan designed to ameliorate sites in and along the Hudson River identified as contaminated with polychlorinated biphenyls (hereinafter PCBs) (*see* 42 USC §§ 9601-9628; ECL art 17; Public Health Law § 201 [1] [l]; § 1389-b [1] [a]).

---

1. The Waterford Water District provides drinking water for the Town of Waterford and some residents in the Town of Halfmoon, also located in Saratoga County.

In 2002, almost 20 years after the Hudson River was first placed on the National Priorities List and designated as a Superfund site, a plan was approved by the EPA to dredge the river to remove sediment laden with PCBs (*see* 42 USC § 9601 *et seq.*). After the plan was publicly announced, petitioner and other communities located downstream from the dredging project immediately voiced concerns as to the impact dredging the river would have on their water supply. In response to those complaints, the EPA directed General Electric Company to prepare a water supply options analysis, which would evaluate the contingency measures available to provide municipalities with water if their drinking supply was adversely affected by this project. After the final report on this analysis was published, petitioner sought disclosure through the Freedom of Information Law (*see* Public Officers Law art 6 [hereinafter FOIL]) of respondent's records regarding how alternate water supplies would be made available during the implementation of the project and the standards to be employed to determine what would constitute an acceptable level of PCBs in a municipality's water supply.[2]

While respondent provided some documents, it redacted and withheld others claiming that they were exempt from disclosure pursuant to certain exemptions in FOIL (*see* Public Officers Law § 87 [2] [a], [g]). Petitioner filed an administrative appeal

---

2. Specifically, petitioner requested disclosure of
   "(1) [a]ll documents, memos, studies, findings, correspondence, faxes, e-mails, notes or other information relating to the provision or possible provision of alter[n]ative water supplies for the Towns of Waterford and/or Halfmoon during the upcoming EPA Hudson River dredging project; (2) [a]ll documents, memos, studies, findings, correspondence, faxes, e-mails, notes and/or other information between EPA and/or [DOH] and/or [respondent] discussing, or in any way relating to, state and/or federal guidelines for permitted PCB content in a water supply. This demand shall also include, but not be limited to, any and all documents or determinations of 'safe' or acceptable limits for human consumption and all documents upon which the aforesaid determination is based; (3) [a]ll documents, memos, studies, findings, correspondence, faxes, e-mails, notes or other information that in any way relates to [respondent] or any other agency or department of the State of New York waiving or otherwise modifying the applicable New York State and/or any other applicable regulations for acceptable PCB exposure, be it short term or long term."
   This request was supplemented by a second request asking for "[a]ll documents, memos, studies, comments, findings, correspondence, faxes, e-mails, notes or other information received [and] submitted by [respondent] in response to General Electric's 'Water Supply Options Analysis' report."

and, in its final determination, respondent provided petitioner with two additional documents that previously were withheld, but concluded that the remaining documents were exempt from disclosure. Specifically, respondent determined that the records being sought contained "opinions, ideas, or advice exchanged as part of the consultative or deliberative process of government decision making" and were exempt from disclosure as inter-agency or intra-agency deliberative materials pursuant to Public Officers Law § 87 (2) (g). It also determined that some of the records requested by petitioner contained attorney/client communications or attorney work product, or were confidential settlement negotiations, and were exempt from disclosure pursuant to Public Officers Law § 87 (2) (a) and (g).

Petitioner thereafter commenced this CPLR article 78 proceeding seeking, among other things, a judgment directing respondent to produce those documents it had so far refused to disclose. Concluding that the inter-agency/intra-agency exemption contained in Public Officers Law § 87 (2) (g) did not apply to any communications a state agency might have with a federal entity like the EPA, Supreme Court determined that the documents that were withheld, apart from those that the court designated as records created as part of settlement negotiations, should be disclosed. Both petitioner and respondent now appeal.

The threshold issue raised by respondent's appeal is whether FOIL's inter-agency/intra-agency exemption could ever apply to any communication between state and federal governmental agencies. Petitioner claims—and Supreme Court agreed—that the definition of the term "agency" as contained in FOIL established the parameters of this exemption and limits its application to materials exchanged within and between state and municipal governmental agencies.[3] Because this interpretation, in our view, is at odds with the fundamental purpose sought to be served by this exemption and, on these facts, ignores the nature of the relationship that has existed for many years between respondent, DOH and the EPA in the planning and implementation of this remediation project, we reverse this part of Supreme Court's judgment and find that, if the other requirements of the exemption have been met, it may apply to records containing communications that have been exchanged between these agencies.

---

**3.** Public Officers Law § 86 (3) defines an agency as "any state or municipal department, board, bureau, division . . . or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature."

At the outset, we reiterate that the provisions of FOIL must be construed liberally, and that governmental agencies subject to its provisions must, as a general rule, make their records, upon request, public unless the agency can demonstrate that a statutory provision exempting the requested material from disclosure is applicable (*see* Public Officers Law § 87 [2]; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 417 [1995]; *Matter of Russo v Nassau County Community Coll.*, 81 NY2d 690, 697-698 [1993]; *Matter of Stein v New York State Dept. of Transp.*, 25 AD3d 846, 847 [2006]; *Matter of Mingo v New York State Div. of Parole*, 244 AD2d 781, 782 [1997]). However, such an interpretation should not "lead to an unreasonable result or defeat the general purpose and manifest policy intended to be promoted" by the statute or, as in this case, the exemption (*Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d 246, 252 [1987]; *see Matter of Petterson v Daystrom Corp.*, 17 NY2d 32, 38 [1966]). In our view, the interpretation urged by petitioner—that this exemption can never be applied to a communication with a federal agency, no matter its content or context—is dramatically at odds with the very purpose for which this exemption was enacted and one that, on these facts, is not in the public interest.

In deciding to exempt from disclosure under FOIL certain intra-agency or inter-agency materials that contain "communications exchanged for discussion purposes not constituting final policy decisions" (*Matter of Russo v Nassau County Community Coll.*, 81 NY2d at 699), the Legislature recognized the need to "permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 488 [2005]; *see Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 276 [1996]; *Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 132-133 [1985]; *Matter of Miller v New York State Dept. of Transp.*, 58 AD3d 981, 984 [2009], *lv denied* 12 NY3d 712 [2009]).[4] Here the issue is not the content or context of the communication;

---

4. Public Officers Law § 87 (2) (g) provides that records that are "inter-agency or intra-agency materials" are exempt from disclosure if they are not:
   "i. statistical or factual tabulations or data;
   "ii. instructions to staff that affect the public;
   "iii. final agency policy or determinations;

instead, it is the identification of the parties and whether any communication they might have had could qualify for this exemption. In that regard, we believe it important to note that respondent, DOH and the EPA, since 1983, have joined in a collaborative effort to address the environmental threat posed by PCB laden sediments in the Hudson River. Respondent's involvement in this project stems from its statutory responsibility to administer this state's efforts to remediate inactive hazardous waste disposal sites and, with DOH, to assess the risk that contaminants at such sites, like PCBs, pose to human health and the environment. Included in that responsibility is the obligation to design and implement remediation plans for these sites that are funded by the state and are directed at reducing or eliminating the risks that these sites pose to the environment (*see* Public Health Law § 201 [1] [l]; § 1389-b [1] [a]; 6 NYCRR part 375). The EPA is the federal agency charged with investigating and remediating hazardous waste sites located in the United States, including those that have been contaminated with PCBs (*see* 42 USC § 9601 *et seq.*).

After PCBs were found to have contaminated sites in and along the Hudson River, the EPA placed the river on the National Priorities List and, in 1984, entered into the first of a series of cooperative agreements with respondent by which these agencies would collaborate in the preparation of a plan designed to address the PCB contamination. Pursuant to these agreements, respondent agreed to "provide support agency activities assistance," which included "furnish[ing] necessary data to the lead agency [i.e., EPA], review[ing] response data and documents, and provid[ing] other assistance to the lead agency" (40 CFR 35.6015 [a]; *see* 40 CFR 300.5). For its part, the EPA, as the lead agency, agreed that the project as implemented would comply with the state Environmental Conservation Law and, in that regard, would employ the "level or standard of control" established by New York State law with respect to pollutants such as PCBs (*see* 42 USC § 9621 [d] [2] [A]). Given this relationship—and the statutory requirement that these governmental agencies collaborate in the formulation and subsequent implementation of a plan to address PCB contamination in the Hudson River—the need for their personnel to be able to engage in an open and frank exchange of ideas as to how best to achieve this result is manifest. The exemption was enacted in recogni-

"iv. external audits, including but not limited to audits performed by the comptroller and the federal government."

tion that this type of communication between governmental agencies requires a measure of privacy to insure " 'that persons in an advisory role would be able to express their opinions freely to agency decision makers' " on how best to address a problem implicating their statutory responsibilities (*Matter of Xerox Corp. v Town of Webster*, 65 NY2d at 132, quoting *Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d 546, 549 [1981]; *see Ryan v Department of Justice*, 617 F2d 781, 789-791 [DC Cir 1980]).

Petitioner has not challenged the relationship that respondent maintains it has with DOH and the EPA, or that all three agencies are obligated by statute, as well as contract, to collaborate on this remediation project. Instead, petitioner contends that this exemption does not apply because "agency," as defined in FOIL, is limited to state and municipal governmental entities and, therefore, this exemption cannot be used to protect communications that these agencies might have with an outside entity like the EPA.[5] However, this definition, given its placement in the statute, was obviously designed to identify those governmental agencies covered by FOIL—and FOIL undoubtedly applies to state governmental agencies like respondent and DOH.[6]

More importantly, the operative term in this proceeding is "inter-agency or intra-agency materials," and while that term has not been defined in FOIL, it has been interpreted to include

---

**5.** We recognize that the Committee on Open Government has issued advisory opinions advising that communications between state agencies and the EPA are not exempt from disclosure as inter-agency material because, as a federal agency, the EPA "falls beyond the definition of 'agency' as that term is defined" by FOIL (Comm on Open Govt FOIL-AO-12034 [2000]; Comm on Open Govt FOIL-AO-11985 [2000]). The Committee has also advised that "[s]ince the definition of 'agency' does not include a federal agency, [Public Officers Law] § 87 (2) (g) could not be cited as a means of withholding communications with . . . a federal entity" (Comm on Open Govt FOIL-AO-12034 [2000]; Comm on Open Govt FOIL-AO-11985 [2000]; Comm on Open Govt FOIL-AO-11415 [1999]). However, these advisory opinions are persuasive authority only, are not binding on respondent and are not "entitled to greater deference in [a CPLR] article 78 proceeding than is the construction of [respondent]" (*Matter of Buffalo News v Buffalo Enter. Dev. Corp.*, 84 NY2d 488, 493 [1994] [internal quotation marks and citation omitted]). And, in light of our analysis here, we find that the Committee's interpretation of FOIL's inter-agency exemption, to the extent that this interpretation is sought to be applied here, is misplaced.

**6.** This exemption has been found to apply to "inter-agency" communications that occur between state and municipal governmental entities (*see Matter of Ramahlo v Bruno*, 273 AD2d 521, 522 [2000], *lv denied* 95 NY2d 767 [2000]; *see also Matter of Marino v Pataki*, 55 AD3d 1171, 1172-1173 [2008]).

communications between state agencies and outside entities that, like the EPA, do not fall within the literal definition of "agency" contained in the statute (*see Matter of Xerox Corp. v Town of Webster*, 65 NY2d at 133; *Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d at 549; *see also Matter of 124 Ferry St. Realty Corp. v Hennessy*, 82 AD2d 981, 983 [1981]). Factors considered in determining the applicability of this exemption are the nature of the relationship the outside entity had with the state or municipal agency, as well as the content and context of the communications sought to be disclosed (*id.*). Moreover, simply because the outside entity was a private concern and not part of a state or municipal agency did not preclude application of the exemption to their communications.

The federal equivalent of FOIL (*see* 5 USC § 552) has a similar provision exempting from disclosure certain intra-agency and inter-agency communications,[7] and that provision, while the subject of various interpretations, has in large measure been found to apply to communications that federal agencies have with outside entities.[8] And, in commenting on the applicability of this exemption, the United States Supreme Court noted that while the statute does not "say anything about communications with outsiders, some Courts of Appeals have held that in some circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum under [that exemption]" (*Department of Interior v Klamath Water Users Protective Assn.*, 532 US 1, 9 [2001] [citations omitted]). The Court went on to note with approval a statement made in an earlier opinion by Justice Scalia, and joined by Justices O'Connor and White, where he explained that " 'the most natural meaning of the phrase "intra-agency memo-

---

**7.** Exemption 5 of the Federal Freedom of Information Act provides that disclosure does not apply to matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" (5 USC § 552 [b] [5]).

**8.** (*See Ryan v Department of Justice*, 617 F2d at 789-791 [statements in questionnaires completed by United States Senators and sent to Department of Justice found to be intra-agency memorandums and exempt from disclosure]; *Wu v National Endowment for Humanities*, 460 F2d 1030, 1031-1034 [5th Cir 1972], *cert denied* 410 US 926 [1973] [statement of professors not agency employees evaluating a treatise for publication deemed to be an intra-agency memoranda]; *Brockway v Department of Air Force*, 518 F2d 1184, 1191 [8th Cir 1975] [statement of witnesses regarding military aircraft safety deemed to be intra-agency material and exempt from disclosure]; *compare Center for Intl. Envtl. Law v Office of U.S. Trade Representative*, 237 F Supp 2d 17, 24-29 [D DC 2002] [documents shared by federal agency in Chilean government not an inter-agency material and not exempt from disclosure].)

randum" is a memorandum that is addressed both to and from employees of a single agency' " (*id.* at 9, quoting *Department of Justice v Julian*, 486 US 1, 18 n 1 [Scalia, J., dissenting 1988]), but acknowledged that

> " '[i]t is textually possible and . . . in accord with the purpose of the provision, to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency—e.g., in a capacity as employee or consultant to the agency, or *as employee or officer of another governmental unit (not an agency) that is authorized or required to provide advice to the agency*' " (*Department of Interior v Klamath Water Users Protective Assn.*, 532 US at 9-10, quoting *Department of Justice v Julian*, 486 US at 18 n 1 [emphasis added]).

We also note that in an analogous situation utilizing a similar statute, the Massachusetts Department of Environmental Protection was found to be entitled to withhold documents and information from public disclosure that it had received from the EPA that were "integral to [the Department's] internal decision making processes regarding" the designation of a hazardous waste site (*General Elec. Co. v Department of Envtl. Protection*, 429 Mass 798, 807, 711 NE2d 589, 595 [1999]; *see General Elec. Co. v United States Envtl. Protection Agency*, 18 F Supp 2d 138, 142-143 [1998]; *but see People for the Am. Way Found. v United States Dept. of Educ.*, 516 F Supp 2d 28, 35-42 [D DC 2007]).

Given this history, we are of the view that the legislative purpose in providing this exemption to the disclosure requirements of FOIL can only be served by focusing on the nature of the relationship that exists between the entities, and asking whether the communication in question is exchanged as part of the deliberative process in government decision-making (*see Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d at 252; *Matter of Westchester Rockland Newspapers v Kimball*, 50 NY2d 575, 581 [1980]; *see also Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d at 549). Here, the relationship that has existed for more than 25 years among these state and federal agencies on this project is statutorily based and memorialized by contractual agreements which, in effect, require that they work together to address the threat posed by

PCB contamination in the Hudson River. In terms of this project, respondent, DOH and the EPA share a common objective, and by law as well as by contract are required to work as one unit to achieve that objective (*compare Matter of Tuck-It-Away Assoc., L.P. v Empire State Dev. Corp.*, 54 AD3d 154, 164 [2008], *affd* 13 NY3d 882 [2009]). Under the circumstances, communications among them may well be part of the deliberative process and qualify for protection of the intra-agency or inter-agency exemption. Since Supreme Court, as previously noted, limited its decision to an interpretation of the phrase "intra-agency/inter-agency materials," we must remit this matter for the court to conduct an in camera review of the materials at issue to determine whether they otherwise qualify as exempt communications under Public Officers Law § 87 (2) (g).

Addressing petitioner's cross appeal, it argues that Supreme Court erred in finding that four records were properly withheld because they were documents exchanged between respondent, the EPA and General Electric in furtherance of settlement negotiations. We agree. While "an agency may deny access to records which 'are specifically exempted from disclosure by state or federal statute'" (*Matter of Capital Newspapers Div. of Hearst Corp. v City of Albany*, 63 AD3d 1336, 1337 [2009], *mod* 15 NY3d 759 [2010], quoting Public Officers Law § 87 [2] [a]), respondent points to no statute that specifically exempts documents that are created as part of settlement negotiations. CPLR 4547 provides that evidence regarding settlement negotiations is "inadmissible as proof of liability for or invalidity of the claim or the amount of damages," but says nothing as to the disclosure of that information. Even if we were to agree with respondent that these records were created as part of an effort to reach a negotiated settlement, CPLR 4547 is not a rule designed to limit the scope of discovery and does not provide that settlement discussions are confidential or would be otherwise exempt under FOIL. We therefore agree with petitioner that respondent failed to show that these materials were "specifically exempted from disclosure" by CPLR 4547 (Public Officers Law § 87 [2] [a]; *see e.g. Matter of Newsday, Inc. v State Dept. of Transp.*, 5 NY3d 84, 87-90 [2005]) and should not have been withheld.

EGAN JR., J. (concurring in part and dissenting in part). While we agree with the majority that Supreme Court erred in finding that four records were properly withheld by respondent as documents exchanged in furtherance of settlement negotiations, we respectfully dissent from that part of the majority's opinion

that expands the scope of the inter-agency/intra-agency exemption set forth in the Freedom of Information Law (hereinafter FOIL) to include materials exchanged between state and federal agencies involved in the Hudson River polychlorinated biphenyls (hereinafter PCB) dredging project. In our view, the majority thwarts the basic premises that FOIL is to be construed liberally, that government records are presumptively available for public inspection, and that exemptions are to be construed narrowly (*see Matter of Gomez v Fischer*, 74 AD3d 1399, 1400 [2010]; *Matter of Carnevale v City of Albany*, 68 AD3d 1290, 1292 [2009]; *Matter of New York State United Teachers v Brighter Choice Charter School*, 64 AD3d 1130, 1131 [2009], *lv granted* 13 NY3d 712 [2009]).

Here, to avoid disclosure under FOIL, it was respondent's burden to demonstrate that the material requested "falls squarely within an exemption" (*Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 74 AD3d 1417, 1418 [2010] [internal quotation marks and citation omitted]; *see Matter of Markowitz v Serio*, 11 NY3d 43, 50-51 [2008]; *Matter of Bass Pro, Inc. v Megna*, 69 AD3d 1040, 1042 [2010]), which respondent is unable to do since, by the very definition of the term "agency" (*see* Public Officers Law § 86 [3]), the inter-agency/intra-agency exemption is specifically limited to materials exchanged within and between state and municipal governmental agencies (*see* Public Officers Law § 87 [2] [g]). While in limited cases, materials prepared by outside consultants hired at the behest of a state or municipal governmental agency—for instance real estate appraisers, architects or engineers—may also be considered "intra-agency" materials (*see Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 132-133 [1985]; *Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d 546, 549 [1981]; *Matter of 124 Ferry St. Realty Corp. v Hennessy*, 82 AD2d 981, 983 [1981]), respondent does not argue that the United States Environmental Protection Agency (hereinafter EPA) was acting as its consultant, and indeed it is apparent that both agencies had independent authority to investigate the Hudson River PCB sites, with the EPA eventually undertaking lead agency status. Interestingly, the inter-agency/intra-agency exemption found in FOIL was patterned after that same exemption found in the Federal Freedom of Information Act (hereinafter FOIA) (*see* 5 USC § 552 [b] [5]; *Matter of Tuck-It-Away Assoc., L.P. v Empire State Dev. Corp.*, 54 AD3d 154, 162 [2008], *affd* 13 NY3d 882 [2009]; *Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d at 548-549). While the majority seeks to compare and apply the

approach used by federal courts in the application of FOIA to nonagency and consultant work (*see* 5 USC § 552 [b] [5]; *Ryan v Department of Justice*, 617 F2d 781, 789-791 [DC Cir 1980]; *Lead Indus. Assn., Inc. v Occupational Safety & Health Admin.*, 610 F2d 70, 83 [2d Cir 1979]; *Wu v National Endowment for Humanities*, 460 F2d 1030, 1032 [5th Cir 1972], *cert denied* 410 US 926 [1973]; *Soucie v David*, 448 F2d 1067, 1078 n 44 [DC Cir 1971]), the paid consultant analogy is not, in our view, suited because the EPA, while working with respondent, maintained its status as an independent agency with its own interests (*see Department of Interior v Klamath Water Users Protective Assn.*, 532 US 1, 10-11 [2001]), and "there simply is no precedent for withholding documents under [e]xemption 5 [of FOIA] where a federal agency and a non-federal entity share ultimate decision-making authority with respect to a co-regulatory project" (*People for the Am. Way Found. v United States Dept. of Educ.*, 516 F Supp 2d 28, 39 [D DC 2007]; *see Chesapeake Bay Found., Inc. v U.S. Army Corps of Engrs.*, 722 F Supp 2d 66, 76, n 9 [D DC 2010]; *Center for Intl. Envtl. Law v Office of U.S. Trade Representative*, 237 F Supp 2d 17, 26 [D DC 2002]).

Finally, we note that the Committee on Open Government has opined that communications between state agencies and the EPA are not exempt from disclosure as inter-agency materials under FOIL (*see* Comm on Open Govt FOIL-AO-12034 [2000]; Comm on Open Govt FOIL-AO-11985 [2000]). And, while the majority is correct that such opinions are not binding on the courts (*see Matter of John P. v Whalen*, 54 NY2d 89, 96 [1981]; *Matter of Csorny v Shoreham-Wading Riv. Cent. School Dist.*, 305 AD2d 83, 90 [2003]), in this case, the Committee was right. Accordingly, we would modify the judgment by reversing so much as dismissed petitioner's application for disclosure of portions of records 228 and 239 and the entirety of records 242 and 243, but otherwise affirm.

CARDONA, P.J., and MALONE JR., J., concur with KAVANAGH, J.; EGAN JR. and MERCURE, JJ., concur in part and dissent in part in a separate opinion by EGAN JR., J.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) granted that part of petitioner's application for disclosure of certain records as not falling within the inter-agency/intra-agency exemption, and (2) dismissed that part of petitioner's application for disclosure of

portions of records 228 and 239 and the entirety of records 242 and 243; petition granted to the extent of disclosing said records, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.