[861 NYS2d 51]

In the Matter of Tuck-It-Away Associates, L.P., Respondent, v Empire State Development Corporation, Appellant. In the Matter of West Harlem Business Group, Respondent, v Empire State Development Corporation, Appellant.

First Department, July 15, 2008

### APPEARANCES OF COUNSEL

*Carter Ledyard & Milburn LLP*, New York City (*Ethan I. Strell, Jean M. McCarroll* and *Pamela Shelinsky* of counsel), for appellant.

*McLaughlin & Stern, LLP*, New York City (*Steven J. Hyman* of counsel), *Norman Siegel*, New York City, and *Philip R. Van Buren*, New York City, for respondents.

### OPINION OF THE COURT

Catterson, J.

In these two related but separate appeals, we examine the Freedom of Information Law and the principles underpinning it in order to determine how strictly the law's exemptions should be construed. Specifically, we focus on the issue of what materials may be considered as exempt intra- or inter-agency documents when a government agency hires a consultant that is also

working for an entity with an interest in the outcome of the government agency's determination.

Almost 100 years ago, United States Supreme Court Justice Brandeis commented on the value of disclosure by government, observing that "sunshine is said to be the best of disinfectants." (Other People's Money and How the Bankers Use It [1914].) The New York Legislature subsequently codified that precept in the Freedom of Information Law (hereinafter referred to as FOIL [Public Officers Law § 84 *et seq.*]). The legislative declaration of section 84 states unequivocally that "government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government." Nevertheless, there are exemptions under FOIL, which are enumerated in Public Officers Law § 87 (2), and which lie at the crux of these two appeals.

The question presented is whether an intra-agency or inter-agency exemption attaches to the government agency's communications with a firm hired as a consultant by that agency whose approval is required for the project, when the same firm was also hired by the entity promoting the project in question. The issue arises in connection with a proposed development of a new 17-acre campus by Columbia University in the Manhattanville section of West Harlem. The proposal includes plans for building 17 high-rise towers housing 4.7 million square feet of space and a single 2.1-million-square-foot, seven-story-deep "bathtub" under most of the area. In order to realize its plan, Columbia needs the approval and participation of a number of government agencies including respondent Empire State Development Corporation (hereinafter referred to as ESDC). Specifically, it requires ESDC's approval because the plan involves the taking of private and public property through the power of eminent domain with transfer of the property to Columbia. Columbia also needs ESDC's power to override local law to build its proposed "bathtub" because transferring the land beneath the city streets would require amending the New York City Map.

Petitioner Tuck-It-Away Associates (hereinafter referred to as TIA) is a business located in the area that is intended to be part of Columbia's project. TIA is a member of petitioner West Harlem Business Group (hereinafter referred to as WHBG) which was formed in 2004 by businesses within the area targeted by Columbia in order to protect their property rights against Columbia's plans to have their property condemned through the exercise of eminent domain.

In June 2004, Columbia hired the firm Allee King Rosen & Fleming (hereinafter referred to as AKRF) to assist in its planning, and to act as its agent in seeking approvals and determinations from various agencies necessary to realize its expansion plan. AKRF participated in ESDC planning meetings in connection with the project, together with Columbia officials, Columbia's attorneys and other Columbia contractors, as well as representatives of other agencies. In addition, Columbia hired AKRF to prepare a City Map Override Proposal which involved site surveys, map and drawing preparation, and planning of the below grade "bathtub" as well as relocation of an existing MTA bus depot, Con Edison substation, and existing underground utilities and services. Columbia also hired AKRF to prepare an environmental impact statement (hereinafter referred to as EIS).

Further, Columbia applied to the New York City Planning Commission (hereinafter referred to as CPC) under section 197-c of the New York City Charter for rezoning of a 35-acre area that included the proposed project area. As a result, the New York City Department of City Planning (hereinafter referred to as DCP) became the lead agency for purposes of environmental review under the State Environmental Quality Review Act (hereinafter referred to as SEQRA) and the City Environmental Quality Review (hereinafter referred to as CEQR). The EIS was also to be used for ESDC's possible condemnation and local law override actions.

On July 30, 2004, Columbia entered into an agreement with ESDC to cover ESDC's costs of preparatory work in connection with ESDC's potential participation in Columbia's expansion plan. The agreement provided, inter alia, that Columbia pay for AKRF to execute a blight study. The study was to be undertaken by the firm of Carter Ledyard & Milburn LLP (hereinafter referred to as CLM). ESDC was to retain CLM as outside counsel. A blight study was determined necessary to provide ESDC with a basis to find that the area at issue was "substandard or insanitary" as required for ESDC's participation in the project and for the exercise of its eminent domain and local law override powers. (*See* McKinney's Uncons Laws of NY § 6260 [c] [1] [Urban Development Corporation Act § 10 (c) (1), as added by L 1968, ch 174, § 1, as amended]).

Specifically, ESDC retained AKRF as a subconsultant in connection with the preparation of a neighborhood conditions study. ESDC staff initiated communications with AKRF in March

2006. During its preliminary discussions with AKRF, ESDC contends that it was made clear to AKRF that it would need to maintain separation between the team working on the neighborhood conditions study and the team assigned to the work being performed on Columbia's behalf (i.e., the environmental impact review under SEQRA and CEQR). ESDC maintains that it "always considered its communications with AKRF concerning the neighborhood conditions study to be confidential, and AKRF assured ESDC that such communications would not be disclosed to outside parties, including Columbia University."

On June 15, 2006, WHBG made a FOIL request, which sought various documents in the period from November 1, 2005 through June 15, 2006. On October 13, 2006, TIA also made a FOIL request seeking various documents from the same time period. These FOIL requests are the subjects of the instant cases.

The WHBG FOIL request sought any and all records pertaining to the proposed Columbia agreement from November 1, 2005 through June 15, 2006. The TIA FOIL request similarly sought any and all records in possession and control of ESDC pertaining to the Manhattanville Project, related planning activities, and related actions by Columbia University including, but not limited to, "[t]he final forms of the above referenced agreement between ESDC and Columbia for which Columbia agreed to pay certain costs in its letter to ESDC of July 30, 2004."

The TIA FOIL request further sought

> "[a]ny extension of this agreement, modification of its terms, or any related or subsequent agreement between ESDC and Columbia relating to the Manhattanville Project, Columbia's [197-c] application . . . for the commissioning, evaluation or comment on any study of blight in the Manhattanville area, or for the scoping, or drafting of an Environmental Impact Statement . . . for either an ESDC condemnation action, adoption of a General Project Plan or for the New York City Department of Planning rezoning of the area."

Additionally, it sought, inter alia, "[a]ll 'Transactional Documents' including restrictive deeds, land acquisition and disposition agreements between ESDC and Columbia and all necessary and appropriate documents related thereto drafted, reviewed or negotiated by ESDC."

ESDC responded to the FOIL requests and provided several documents but maintained that it did not possess the records requested or that responsive records could not be found after a diligent search. ESDC further maintained that some of the documents which were responsive were exempt because disclosure would impair present or imminent contract awards or collective bargaining negotiations.

ESDC affirmed its initial determination after an administrative appeal and WHBG filed a petition, dated November 8, 2006, pursuant to article 78 of the CPLR challenging ESDC's final determination. TIA also filed an article 78 petition, dated May 24, 2007. They both maintained that ESDC's determinations denying their administrative appeals were arbitrary and capricious, an abuse of discretion, and were affected by an error of law. Specifically, TIA maintained that the applicability of the inter-agency and intra-agency exemption to agency consultants is inappropriate when the consultant also represents an applicant seeking the benefit of the agency's decision in the same matter. It also maintained that ESDC failed to sufficiently specify a particularized basis to establish that the records withheld were in fact inter-agency or intra-agency or that they did not contain factual data, instructions to staff that affect the public, or final agency policy or determinations as required by Public Officers Law § 87 (2) (g).

WHBG also asserted that ESDC failed to offer particularized and specific justification for denying access to the demanded documents since it failed to indicate "the nature of the records it is withholding, what present or imminent contract award is at risk of impairment, [or] how disclosure of these records could impair such contract."

WHBG and TIA sought declarations that ESDC's denial of their requests for documents and written communications relating to the Columbia project violates FOIL. WHBG further sought an order directing ESDC to provide the responsive documents and to deliver to the court for its inspection all documents which ESDC claimed were exempt as well as an award for its costs and fees incurred in connection with this action. TIA sought an order directing ESDC to deliver to it all of the documents responsive to its request; and directing ESDC to search the paper and electronic files of an additional 34 ESDC current and former officers and employees identified in its petition for records responsive to its request, directing it to provide additional specific and particular reasons establishing the inter-

agency or intra-agency status of records claimed as exempt. In the alternative, TIA requested an order directing ESDC to deliver to the court for in camera review certain documents withheld on the ground that they were subject to the inter-agency or intra-agency exemption.

ESDC moved to dismiss the petitions on the ground that it had provided all responsive documents that are not exempt under FOIL or privileged, and that it had fully satisfied its obligations under FOIL.

In the WHBG matter, Supreme Court issued an interim order entered May 8, 2007, in which it properly directed in camera review of the documents at issue. Thereafter, in the order appealed from, the court directed that certain of the documents, or parts thereof, be disclosed. The court divided the documents to be disclosed into five sections: (I) "redact and release," which included documents not covered by the agency or privilege exemptions, with redactions to protect portions that fall within those exemptions; (II) documents that are not intra-agency or inter-agency and/or were disclosed to unidentified persons or non-agency individuals;[1] (III) documents that constitute instructions to staff that affect the public, which is an exception to the agency exemption; (IV) an attachment not provided to the court thus requiring the court to find that ESDC failed to meet its burden of demonstrating that it is subject to an exemption; and (V) documents that are intra-agency or inter-agency, but not deliberative.[2]

The application court made the following determinations in the WHBG petition: With regard to documents in section II, the court held that the agency exemption did not apply due to AKRF's role as a consultant to Columbia. Specifically, it stated:

"in order for a consultant to fall under the agency exemption, the consultant must not represent an interest of its own, or the interest of any other client, when it advises the agency . . . . For the

---

1. The court noted that "[a] document that has been disclosed to a third party, outside of the agency or agencies, generally is not covered by the agency exemption." (2007 NY Slip Op 34369[U], *4.) It found that ESDC "did not properly invoke the agency exemption for written communications between respondent and a consultant, [AKRF], prior to its retention by respondent on November 11, 2006." (*Id.*) However, as noted above, AKRF began working for ESDC in March 2006, well prior to its actual retention.

2. On appeal, no arguments are specifically asserted by respondent-appellant for documents in section I (where appellant claimed attorney-client privilege) or section IV (an attachment not provided to the court).

consultant's documents to fall under the agency exemption, its only obligations must be to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do. The rationale for the consultant exception falls apart where the consultant acts in their own interest or on behalf of any person or group whose interest might be affected by the Government action addressed by the consultant." (*Id.* at \*5 [internal quotation marks and citations omitted].)

The court held that "while acting for Columbia, AKRF has an interest of its own in the outcome of [ESDC's] action, as AKRF, presumably, seeks to succeed in securing an outcome that its client, Columbia, would favor." (*Id.* at \*6.) As a result, it further found that AKRF "lacks sufficient neutrality for the court to find that AKRF does not represent an interest of its own, or the interest of any other client, when it advises [ESDC]." (*Id.* [internal quotation marks omitted]).

Additionally, the court found that "[t]he 'Chinese wall' exception that [ESDC] would like the court to recognize is not sanctioned by any judicial precedent, and it does not eliminate AKRF's representation of potentially rival interests." (*Id.*) It noted that given the "presumption in favor of disclosure under FOIL, and [that] the burden is on the agency to demonstrate that the material falls squarely within the exemption, any doubts about the neutrality of AKRF must be resolved in favor of disclosure." (*Id.*)

With regard to documents in section III, the application court determined that the documents constituted "instructions to staff that affect the public," which is an exception to the agency exemption. (*Id.* at \*7, quoting Public Officers Law § 87 [2] [g] [ii].) With regard to section V documents, the court stated that "[n]ot every document that travels within or between agencies is exempt from disclosure under FOIL." (*Id.*) It explained that to qualify for the exemption, a "document must be 'predecisional,' which means it must be prepared to assist the policy maker in making a decision and it must be 'deliberative,' which means actually related to the process by which policy is formulated." (*Id.*) The court found that the documents at issue "do not contain deliberations about policy and, therefore, they are outside the agency exemption." (*Id.*) It noted that most of the documents "are [e-mails] discussing the availability of staff for the purpose of scheduling meetings." (*Id.*)

In the TIA matter, the court decided the matter in accordance with its decision in WHBG and directed ESDC to use the criteria set forth in that decision in responding to the FOIL request.

For the reasons set forth below, we modify, affirming the order for disclosure of any documents contained in section II, and reversing the order as it applies to documents contained in sections III and V.

At the outset, we reiterate that the purpose of FOIL is "[t]o promote open government and public accountability" with the law imposing "a broad duty on government to make its records available to the public." (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 274 [1996].) All documents are presumptively available for review unless they fall under one of the exemptions pursuant to Public Officers Law § 87 (2). (*See Matter of M. Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75 [1984].)

We note, however, that in addition to the exemptions enumerated under Public Officers Law § 87 (2), there are certain other exemptions from disclosure under FOIL that have arisen as a result of a more encompassing interpretation of the "interagency and intra-agency" exemption. As the Court of Appeals has explained,

> "[o]pinions and recommendations that would, if prepared by agency employees, be exempt from disclosure under the Freedom of Information Law (FOIL) as 'intra-agency materials' . . . do not lose their exempt status simply because they are prepared for the agency, at its request, by an outside consultant." (*Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 131-132 [1985], quoting Public Officers Law § 87 [2] [g].)

Many of the provisions of FOIL, including the exemption at issue here, were patterned after the federal analogue (the Freedom of Information Act) and thus, as the Court of Appeals has noted, federal case law on the scope of this exemption is therefore instructive. (*Matter of Sea Crest Constr. Corp. v Stubing*, 82 AD2d 546, 548-549 [2d Dept 1981], citing *Matter of Fink v Lefkowitz*, 47 NY2d 567, 572 [1979].)

In *Department of Interior v Klamath Water Users Protective Assn.* (532 US 1, 8 [2001]), the Supreme Court noted that the limited exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective." With respect

to the specific exemption at issue in that case, the Court noted that the "deliberative process covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated'" and that the deliberative process privilege's "object is to enhance 'the quality of agency decisions' . . . by protecting open and frank discussion among those who make them within the Government." (*Id.* at 8, 9, quoting *NLRB v Sears, Roebuck & Co.*, 421 US 132, 150, 151 [1975].) In cases where the exemption has been extended to consultants performing work on behalf of an agency, "the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done." (*Klamath*, 532 US at 10.) The Court further stated:

> "the consultants in these cases were independent contractors and were not assumed to be subject to the degree of control that agency employment could have entailed; nor do we read the cases as necessarily assuming that an outside consultant must be devoid of a definite point of view when the agency contracts for its services. But the fact about the consultant that is constant in the typical cases is that *the consultant does not represent an interest of its own, or the interest of any other client,* when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." (*Id.* at 10-11 [emphasis added].)

Stated another way, the Court explained that "consultants whose communications have typically been held exempt have not been communicating with the Government in their own interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant." (*Id.* at 12.)

Thus, such communications lose their exemption if there is reason to believe that the consultant is communicating with the agency in its own interest or on behalf of another client whose interests might be affected by the agency action addressed by the consultant. (*See id.*)

ESDC is correct in asserting that *Klamath* is facially distinguishable because it involved a situation where the documents

sought were communications between a government agency (the Department of the Interior's Bureau of Reclamation) and Indian tribes, not a consultant, regarding the allocation of water from the Klamath River among competing uses and users, including the tribes themselves. Although the Bureau alleged that it had a consulting relationship with the tribes, the Court held that the exemption did not apply because the tribes were "self-advocates" whose interests were in competition with other nontribal complainants. (*Id.* at 12.) Nonetheless, *Klamath* is instructive.

■ ESDC maintains that AKRF is not Columbia's advocate, but rather, its consultant, retained to use its good judgment and expertise to serve its client's needs truthfully and objectively. That mischaracterizes the problem. More accurately put, the question to be answered is whether the fact that AKRF represents both ESDC and Columbia, albeit, allegedly in separate areas related to the same massive project, constitutes a conflict such that AKRF is not capable of rendering a truthful, objective expert study of neighborhood conditions irrespective of its impact on Columbia's plan. We agree with Supreme Court and hold that such a relationship creates an inseparable conflict for purposes of FOIL, and therefore for the purposes of invoking the agency exemption.

There is no question that Columbia is an interested party in the question of whether ESDC adopts its General Project Plan (hereinafter referred to as GPP). The GPP was tailored around Columbia's own expansion plan, and drafted by Columbia's attorneys to its specifications. The GPP calls for ESDC to, if necessary, exercise eminent domain power to take both public and private property and convey it to Columbia. The GPP also entails ESDC's override of local law to amend the New York City Map to enable development of the below-grade "bathtub."

More importantly, Columbia's interest in ESDC's adoption of its GPP is adverse to the interest of other parties affected by ESDC's eventual decision on the project. Any action by ESDC in Columbia's favor would likely result in the property owners in the expansion plan area having their property taken against their will. Furthermore, it would prevent them from developing their own property. Similarly, it would be contrary to Community Board 9's plan for diversified development in Manhattanville. Indeed, the record reflects that Community Board 9 has specifically expressed its opposition to ESDC's use of eminent domain in Manhattanville.

It is undisputed that AKRF has worked to promote ESDC's adoption of Columbia's GPP. AKRF has been participating in project planning since at least June of 2004 through meetings with ESDC. While in Columbia's employ, AKRF has studied technical, engineering and environmental issues, helping thereby to determine the size, shape and configuration of the proposed project. Similarly, AKRF has prepared surveys, maps, and drawings for the proposed project. AKRF also prepared a City Map Override Proposal which defined the extent, shape, and program of uses of the below-grade development. AKRF has consistently acted as an advocate for Columbia in seeking ES-DC's adoption of Columbia's proposal.

Of course, this was not the limit of AKRF''s service for Columbia. AKRF acted as Columbia's consultant, agent and representative in all phases of environmental review under SEQRA. ESDC's adoption of a GPP is also subject to SEQRA. Thus, AKRF''s work in the project's environmental review is ultimately necessary for ESDC to grant Columbia's application for adoption of the GPP. ESDC could not proceed in condemnation without having completed environmental review under SEQRA. (*See* EDPL 204 [B] [3].) Therefore, AKRF''s work in preparing an EIS, in addition to supporting Columbia's applications to DCP, can only be viewed as serving an advocacy function for Columbia while supporting ESDC's decision with regard to the GPP.

AKRF has also acted as Columbia's agent before other agencies in preparation for proceeding with the project. AKRF, on Columbia's behalf, has sought determinations from the Office of Parks, Recreation and Historic Preservation and the Landmarks Preservation Commission. In that capacity, AKRF has prepared surveys of architectural resources throughout the project area and surrounding area, and subcontracted the performance of archaeological site documentary study.

Finally, we concur with Supreme Court that Columbia's interest in an agency finding of blight is virtually inseparable from its interest in ESDC's adoption of its GPP. A mere confidentiality agreement is an instrument insufficient to solve the inherent conflict in serving two masters on matters of the highest importance to both. Supreme Court clearly had reason to doubt AKRF''s independence, objectivity and "sense of what good judgment calls for" (*Klamath*, 532 US at 11) because AKRF has also been retained by the applicant whose proposed project is the subject of the agency's study to assist the applicant in the planning of the project, including environmental review, and to act

on the applicant's behalf in seeking approvals and determinations from various agencies. Thus, the communications between ESDC, the agency, and AKRF, an outside consultant retained by the agency to prepare a neighborhood conditions (blight) study in connection with a proposed condemnation and a related City Map override, are not subject to FOIL's intra-agency exemption. Thus, the exemption does not apply to any documents contained in section II.

Contrary to the view expressed by the dissent, this does not amount to our acceptance of mere allegations of "the appearance of a bias," but rather it demonstrates that FOIL is not blind to the extensive record of the tangled relationships of Columbia, ESDC and their shared consultant, AKRF. It is clear from the record outlined above that the gargantuan size of the project, the layers of conflict between Columbia and ESDC and the difficulty of offering perfectly objective advice while serving two masters elevates this FOIL appeal beyond the average agency-consultant relationship that the FOIL exemptions are designed to foster and protect.

■ The intra-agency communications in section III concerning how the agency should respond to an inquiry from a member of the public about its role in the proposed project were not, as the application court found, instructions to staff that affect the public subject to disclosure under Public Officers Law § 87 (2) (g) (ii). Rather, it is clear from the communications in question that the agency had not yet determined how to respond to the inquiry about its role in the project if only because it was not yet certain what its role would be, and that no final instructions were given as to how to respond to the inquiry.

Finally, the intra-agency documents in section V that the court directed to be released as "not deliberative" (2007 NY Slip Op 34369[U] at *7) are for the most part e-mails discussing the scheduling of meetings involving the project. While disclosure of such mundane communications would certainly not be contrary to the purpose of the intra-agency exemption "to permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 488 [2005]), nevertheless, the communications were not factual in nature (Public Officers Law § 87 [2] [g] [i]) and do not otherwise fall within the specifically enumerated statutory exceptions to the intra-agency exemption. Thus, the application for disclosure of materials in the foregoing two sections should be denied.

Accordingly, the orders of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 3, 2007 and on or about August 23, 2007, which, insofar as appealed from, granted petitioners' applications pursuant to the Freedom of Information Law to compel respondent Empire State Development Corporation to release certain documents, should be modified, on the law, to deny the applications for documents in sections III and V and to vacate the portions of orders requiring disclosure of those documents, and otherwise affirmed, without costs.

BUCKLEY, J. (dissenting in part). Inter-agency and intra-agency materials that are deliberative in nature (communications exchanged for discussion purposes and not constituting final policy decisions) are exempt from disclosure under the Freedom of Information Law (FOIL), while materials that are factual in nature are subject to disclosure (*see* Public Officers Law § 87 [2] [g]; *Matter of Russo v Nassau County Community Coll.*, 81 NY2d 690, 699 [1993]). The deliberative materials exception is designed "to permit people within an agency to exchange opinions, advice and criticism freely and frankly, without the chilling prospect of public disclosure," whether the "comments [are] made in official policy meetings and well-considered memorandums" or "offered with little chance for reflection in moments of crisis" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 488 [2005]).

The federal courts have identified three reasons for the rule, which also applies to the Federal Freedom of Information Act (FOIA), upon which FOIL was patterned:

> "[I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. . . .
>
> "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjec-

tive documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." (*Coastal States Gas Corp. v Department of Energy*, 617 F2d 854, 866 [DC Cir 1980]; *see Providence Journal Co. v United States Dept. of Army*, 981 F2d 552, 557 [1st Cir 1992]; *Grand Cent. Partnership, Inc. v Cuomo*, 166 F3d 473, 481 [2d Cir 1999]; *Schell v United States Dept. of Health & Human Servs.*, 843 F2d 933, 939 [6th Cir 1988]; *King v Internal Revenue Serv.*, 684 F2d 517, 519 [7th Cir 1982]; *Federal Trade Commn. v Warner Communications Inc.*, 742 F2d 1156, 1161 [9th Cir 1984]; *Trentadue v Integrity Comm.*, 501 F3d 1215, 1226 [10th Cir 2007]; *Moye, O'Brien, O'Rourke, Hogan, & Pickert v National R.R. Passenger Corp.*, 376 F3d 1270, 1277 [11th Cir 2004].)

Thus, the courts must consider not only "any potential impact public disclosure might have on the employee-advisor," but also "the agency decisionmaker, and the public" (*Providence Journal Co.*, 981 F2d at 557).

The three prongs of the rule (encouragement of uninhibited advice by the employee-advisor, permitting the agency to guard against premature disclosure, and avoidance of confusing and misleading the public) are designed to contribute to an unfettered solicitation and discussion of ideas. Just because an idea is proposed does not mean that the agency will adopt it; in fact, the rationale is that there should be no limitations on the number or content of ideas, since the more options presented to the agency, and the more extensive the discussion, the better the final determination will be. Indeed, the privilege is grounded in "the policy of protecting the decision making processes of government agencies," and has as its "ultimate purpose . . . to prevent injury to the quality of agency decisions" (*NLRB v Sears, Roebuck & Co.*, 421 US 132, 150, 151 [1975] [internal quotations marks and citation omitted]; *see Kheel v Ravitch*, 93 AD2d 422, 427-428 [1983], *affd* 62 NY2d 1 [1984]).

The inter-agency/intra-agency deliberative materials rule has been extended to outside consultants hired by governmental agencies, since "[i]t would make little sense to protect the deliberative process when such reports are prepared by agency

employees yet deny this protection when reports are prepared for the same purpose by outside consultants retained by agencies" (*Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 133 [1985]).

The majority would enable a FOIL applicant to evade the deliberative materials rule merely by alleging the appearance of a bias, in this instance a conflict of interest, on the part of consultants retained by an agency. Under such an approach, it would be of no consequence whether the consultants were the most qualified, lacked an actual conflict or bias, or gave the best possible advice. The result would be to deter agencies from eliciting recommendations from consultants and to inhibit good faith consultants from rendering frank advice; that, in turn, would negatively impact on the quality of agency decisions.

The majority's position, at most, would pertain to the first of the three rationales outlined in *Coastal States Gas Corp. v Department of Energy* (617 F2d 854 [1980], *supra*): encouraging advice givers to be candid in their recommendations. However, that focus ignores the other two interests at stake, the impact premature disclosure might have on agencies and the public.

Furthermore, the majority approvingly cites the Supreme Court's acknowledgment that outside consultants can, and often do, possess a "definite point of view," and its statement that such viewpoints do not, alone, abrogate the inter-agency deliberative materials disclosure protection (*see Department of Interior v Klamath Water Users Protective Assn.*, 532 US 1, 10-11 [2001]). Drawing a distinction between those who advance a position out of fervent belief and those who are driven by mercenary considerations may have a moral appeal, but does little to advance the goal of affording agencies as many options as possible. Moreover, the *Klamath* court reached its conclusion based, in part, on a faulty premise: that employees always give disinterested advice. While employees are certainly expected to do so, and would face disciplinary, if not criminal, consequences if they took payment from another party, they, like consultants, may hold a "definite point of view," which could color their advice. Therefore, other than an easily recognizable bright line, there is no reason to distinguish between consultants and employees who give counsel with a view to a particular outcome. Indeed, the majority's decision ultimately rests upon the thesis that only objective advice should be entitled to the FOIL deliberative materials exemption. If the arbitrary bright lines between consultants with apparent conflicts of interest and consultants

with honestly held agendas, or between consultants and employees, are erased, that thesis can be fulfilled, but at the cost of embroiling the courts in an examination of the bona fides of every advice giver when presented with a FOIL request. That, in turn, could cause agencies to limit the field of advisers they choose to consult, and thereby deprive them of potentially valuable counsel.

It bears noting that the denial of a FOIL request before an agency reaches a determination does not preclude anyone from lobbying the agency while it is considering action or from challenging a decision after it is reached, nor does it absolve the agency from any regulatory obligations to hold predecisional hearings or to provide postdecisional explanations.

Because I believe that the majority's ruling will ultimately harm the quality of agency decisions, I dissent from that part of the order directing disclosure of deliberative materials prepared by the consultant Allee King Rosen & Fleming on behalf of the respondent agency.

ANDRIAS, J.P., and NARDELLI, J., concur with CATTERSON, J.; BUCKLEY, J., dissents in part in a separate opinion.

Orders, Supreme Court, New York County, entered July 3, 2007 and on or about August 23, 2007, modified, on the law, to deny the applications for documents in sections III and V and to vacate the portions of orders requiring disclosure of those documents, and otherwise affirmed, without costs.