Matter of Gartner v New York State Attorney General's Off. (2018 NY Slip Op 02381)





Matter of Gartner v New York State Attorney General's Off.


2018 NY Slip Op 02381


Decided on April 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 5, 2018

524722

[*1]In the Matter of BARBARA GARTNER, Appellant,
v
NEW YORK STATE ATTORNEY GENERAL'S OFFICE et al., Respondents.

Calendar Date: February 21, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Barbara Gartner, New York City, appellant pro se.
Eric T. Schneiderman, Attorney General, Albany (Robert M. Goldfarb of counsel), for respondents.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (McNally Jr., J.), entered June 7, 2016 in Albany County, which partially dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents denying petitioner's Freedom of Information Law request.
In June 2013, petitioner submitted a request to respondent Attorney General's Office under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) seeking any communications related to transactions in which certain charitable endowments were modified, SUNY-Downstate acquired Long Island College Hospital (hereinafter LICH), and subsequently sought court approval to close LICH and sell its property. The
Attorney General's Office informed petitioner that it had located 505 pages that were responsive to this FOIL request, and specified the cost and method of obtaining those documents.
After petitioner sent a check in the amount specified, the Attorney General's Office informed her that, due to a change in circumstances regarding the litigation concerning LICH, the 505 pages that were identified for disclosure were now being withheld as exempt. Petitioner filed an administrative appeal. Respondent Kathryn Sheingold, the records appeals officer for the Attorney General's Office, determined that petitioner was entitled to 195 pages that were already publicly available on the Attorney General's website, but affirmed the partial redaction of five pages and the decision to withhold the remaining pages.
A few months later, after portions of the litigation regarding LICH were resolved, petitioner resubmitted her FOIL request. The Attorney General's Office denied the request, concluding that all documents were exempt. On petitioner's administrative appeal, Sheingold affirmed the denial. Petitioner filed a CPLR article 78 proceeding challenging that denial. The parties negotiated a settlement in which petitioner agreed to withdraw her petition without prejudice in exchange for the disclosure of 305 of the 310 pages that were not already publicly available. As part of the settlement, the Attorney General's Office confirmed that the 505 pages that had previously been identified as responsive represented "the entire universe of documents that respond to the subject FOIL request."
After petitioner reviewed the 305 pages she had received, some of which had been redacted, and realized that they referenced other documents that she had not received, petitioner commenced this second CPLR article 78 proceeding seeking an order compelling respondents to conduct a diligent search for responsive documents, permitting petitioner or an independent third party to examine the files maintained by respondents to determine whether they provided all of the responsive documents, compelling respondents to disclose all records withheld or redacted or submit them for an in camera review, and awarding her counsel fees. Respondents then voluntarily supplied unredacted copies of all pages that had previously been disclosed and the remaining five pages of the original 505 pages. Following a court conference, respondents conducted another search for responsive documents and found 56 additional pages that they then provided to petitioner, as well as 949 additional pages that they withheld based on claimed exemptions for intra-agency materials, inter-agency materials and attorney work product (see Public Officers Law § 87 [2] [a], [g]; CPLR 3101 [c]). Respondents submitted these pages to Supreme Court for in camera review, with an affidavit listing which exemption applied to each group of pages. The court concluded that the 949 pages were properly withheld under the stated exemptions, but awarded petitioner counsel fees based on the way that the Attorney General's Office had handled the FOIL request. Petitioner appeals.
First, we will address petitioner's contentions that respondents must be ordered to conduct a further diligent search for responsive records, provide a new certification of a diligent search and/or allow petitioner or an independent party to conduct such a search. "When faced with a FOIL request, an agency must either disclose the record sought, deny the request and claim a specific exemption to disclosure, or certify that it does not possess the requested document and that it could not be located after a diligent search" (Matter of Beachwood Restorative Care Ctr. v Signor, 5 NY3d 435, 440-441 [2005]; see Public Officers Law § 89 [3] [a]). Petitioner's concern is understandable, considering that respondents originally certified that a diligent search had been conducted and represented that only 505 pages were responsive, whereas they later located more than 1,000 additional responsive pages. The affidavit attesting to the unearthing of those additional documents asserts that more than one diligent search was conducted and the attesting Assistant Attorney General, who was responsible for the underlying proceedings concerning LICH, "believe[d]" that all responsive documents had been turned over to petitioner or to Supreme Court for in camera review. Although the language used in the affidavit is less precise than we would ordinarily expect for a certification, Supreme Court did not err in determining that respondents had conducted and certified a diligent search, as required (see Public Officers Law § 89 [3] [a]; Matter of Gould v New York City Police Dept., 89 NY2d 267, 279 [1996]). Additionally, there is no legal authority to allow a petitioner or independent third party to conduct a search of an agency's records to locate responsive documents; indeed, such a search would be improper because it would inevitably permit the person to view agency records that were not responsive or that were exempt from disclosure.
As to the propriety of respondents' withholding of documents, "[p]ursuant to FOIL, [*2]government documents are presumptively available for inspection and copying unless they are statutorily exempt by Public Officers Law § 87 (2)" (Matter of Humane Socy. of U.S. v Brennan, 53 AD3d 909, 910 [2008] [internal quotation marks and citation omitted], lv denied 11 NY3d 711 [2008]). The agency resisting disclosure under FOIL bears the burden of showing that the responsive document "falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (id. at 910-911 [internal quotation marks and citations omitted]; see Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 18 NY3d 652, 657 [2012]; Matter of Moody's Corp. & Subsidiaries v New York State Dept. of Taxation & Fin., 141 AD3d 997, 999 [2016]). Respondents rely on the exemptions for intra-agency and inter-agency materials and attorney work product.
An exemption from FOIL disclosure exists for intra-agency and inter-agency materials, but there are exceptions — meaning that disclosure is permitted — if the document consists of, among other things, "statistical or factual tabulations or data" (Public Officers Law § 87 [2] [g] [i]). "Factual data . . . simply means objective information, in contrast to opinions, ideas, or advice exchanged as part of the consultative or deliberative process of government decision making" (Matter of Gould v New York City Police Dept., 89 NY2d at 277; see Matter of Humane Socy. of U.S. v Brennan, 53 AD3d at 911). Upon our in camera inspection of the documents, we conclude that most of the pages alleged to be intra-agency materials are exempt because they contain ideas or opinions exchanged between employees of the Attorney General's Office. However, the documents on pages 1 and 286 [FN1] contain factual information without any opinion, rendering them nonexempt. Certain other documents — pages 2-3, 251-252, 263-264, 780-781 and 791-792 — are not exempt because they deal with the scheduling of meetings, rather than any deliberative process.
The same statute that exempts intra-agency materials applies to inter-agency materials, i.e., communications shared between different government agencies to assist a decision maker in one agency in reaching a determination (see Public Officers Law § 87 [2] [g]; Matter of Moody's Corp. & Subsidiaries v New York State Dept. of Taxation & Fin., 141 AD3d at 1001; Matter of Marino v Pataki, 55 AD3d 1171, 1173 [2008]; Matter of Grigger v New York State Div. of Parole, 11 AD3d 850, 852 [2004], lv denied 4 NY3d 704 [2005]). Respondents claim that this exemption applies to communications between the Attorney General's Office and counsel for SUNY-Downstate. Although SUNY-Downstate is apparently a government entity, it was not interacting with the Attorney General's Office in that capacity. SUNY-Downstate was a party to litigation attempting to acquire LICH and modify endowment restrictions in order to meet that goal and, later, to close LICH and sell its property. The Attorney General's Office was not assisting SUNY-Downstate, as a government entity, in its endeavors, but was involved in these transactions under the Attorney General's statutory obligations to protect charitable beneficiaries and the public in situations where a trustee or not-for-profit corporation desires to modify restrictions on a charitable endowment or sell substantially all of its assets (see N-PCL 511, 555; EPTL 8-1.1 [f]; 8-1.4; see also N-PCL 511-a; compare Executive Law § 63 [1]). In this supervisory and oversight role, the Attorney General's Office was more akin to a separate party to the litigation than an advisor for SUNY-Downstate (see EPTL 8-1.4 [e], [m]; N-PCL 511 [b]; cf. EPTL 8-1.1 [h]). In fact, under certain circumstances, a not-for-profit corporation can, "[i]n lieu of obtaining court approval," apply to the Attorney General directly for approval to sell substantially all of its assets (N-PCL 511-a). Considering these circumstances and the positions of the parties in these interactions, the inter-agency exemption does not apply and will not [*3]preclude disclosure of communications between these entities (cf. Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 18 NY3d at 658; Matter of Tuck-It-Away Assoc., L.P. v Empire State Dev. Corp., 54 AD3d 154, 163-164 [2008], affd sub nom. West Harlem Bus. Group v Empire State Dev. Corp., 13 NY3d 882 [2009]). Thus, all of the documents alleged to fall within this FOIL exemption — pages 847-859 — are subject to disclosure.
Respondents further assert that numerous documents are exempt from disclosure because they represent attorney work product. Public Officers Law § 87 (2) (a) exempts from FOIL disclosure any materials "specifically exempted from disclosure by state or federal statute." The CPLR creates privileges for communications between attorneys and their clients exchanged in the course of obtaining legal advice or services (see CPLR 4503 [a]), as well as for attorney work product (see CPLR 3101 [c]; Matter of Shooters Comm. on Political Educ., Inc. v Cuomo, 147 AD3d 1244, 1245 [2017]; Matter of Loudon House LLC v Town of Colonie, 123 AD3d 1409, 1410-1411 [2014]). Yet not every word written by a lawyer "enjoys the absolute immunity of work product. The exemption should be limited to those materials which are uniquely the product of a lawyer's learning and professional skills, such as materials which reflect his or her legal research, analysis, conclusions, legal theory or strategy" (Cioffi v S.M. Foods, Inc., 142 AD3d 520, 522 [2016] [internal quotation marks and citations omitted]; see Geffner v Mercy Med. Ctr., 125 AD3d 802, 802 [2015]).
The documents at issue here are handwritten notes, drafts of pleadings and affidavits, letters and emails to or from attorneys employed by the Attorney General's Office. Most of those documents reflect legal research, analysis and conclusions, rendering them attorney work product. However, our inquiry does not end there. Attorney communications and work product generally do not retain their confidential status if copies "were disclosed to, or made by, third parties" (Netherby Ltd. v G.V. Trademark Invs., 261 AD2d 161, 161 [1999]; see Matter of Morgan v New York State Dept. of Envtl. Conservation, 9 AD3d 586, 597-588 [2004]; see also Fernekes v Catskill Regional Med. Ctr., 75 AD3d 959, 961 [2010]). The draft petitions at issue were originally created by counsel for LICH and sent to the Attorney General's Office for comments and revisions. The Attorney General's Office cannot claim the attorney work product privilege for work done by a private law firm on behalf of a non-government client such as LICH, which documents were then sent to the Attorney General's Office. LICH waived confidentiality and the related privilege by intentionally sending the documents to a third party.
Respondents assert that these documents remain privileged attorney work product because they were "submitted in confidence for review and comment to the Attorney General in his statutory oversight capacity . . . in advance of filing with the court to permit the office to review whether all procedural and substantive requirements are met and that all necessary documents are submitted as exhibits," to resolve the office's concerns before submission to a court. We acknowledge that this informal process of prefiling review presumably expedites the proceedings in court by reducing the need to amend filed petitions and by assuring that the Attorney General's approval will be forthcoming. Nevertheless, respondents do not provide any support for their assertion that the documents remain privileged under these circumstances. Although the Attorney General's Office gave its approval in court to the petitions that were filed — after having provided LICH's counsel with revisions that were apparently necessary or desirable to obtain such approval — that office did not represent LICH in any court proceedings; instead, the Attorney General's Office acted in its oversight capacity when it provided its approval for the transactions or modifications sought by LICH (see EPTL 8-1.4 [e], [m]; N-PCL 511 [b]). No assertion has been made that the common interest doctrine applies to protect any shared communications pertaining to a common legal interest, nor that LICH's interest was sufficiently [*4]aligned with that of the Attorney General's Office such that the doctrine would apply in any event (cf. Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 628 [2016]).
We conclude that the Attorney General's Office failed to meet its burden of establishing that the relevant pages — drafts of legal documents and the letters and emails sent to and from counsel for any party to the various court proceedings — fall squarely within the attorney work product exemption to FOIL disclosure. Accordingly, petitioner is entitled to disclosure of pages 114-249 and 360-775. On the other hand, the handwritten notes prepared by an Assistant Attorney General, and apparently never shared with anyone outside that office, are exempt as attorney work product.
Lynch, Devine, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed that part of the petition finding pages 1-3, 114-249, 251-252, 263-264, 286, 360-775, 780-781, 791-792 and 847-859 exempt from disclosure; petition granted to said extent; and, as so modified, affirmed.



Footnotes

Footnote 1: Page references are to the Bates-stamped pages in the confidential record submitted for in camera review.